[No. 30270-1-I.   Division One.   April 12, 1993.]

ANGELINA GUILE, *Appellant,* v. BALLARD COMMUNITY HOSPITAL, ET AL, *Respondents.*

*Ross E. Taylor,* for appellant.

*Mary H. Spillane* and *Williams, Kastner & Gibbs; David S. Gross* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for respondents.

COLEMAN, J. — Angelina Guile appeals the trial court's orders of summary judgment dismissing her medical malpractice claims against Frank Crealock, M.D., and Ballard Community Hospital (Ballard). Guile argues that Crealock and Ballard failed to establish the absence of genuine issues of material fact and that the affidavit of Dr. Sherman Meyer, an osteopath licensed in Arizona, was sufficient to defeat the summary judgment motions. We affirm.

In 1986 Angelina Guile began periodically seeing Dr. Frank Crealock, a Seattle-area obstetrician/gynecologist, for various gynecological concerns. On August 31, 1988, Guile went to the emergency room of a hospital in Olympia, suffering from what she thought was a sudden prolapse of the uterus. She was seen by Crealock on September 7, 1988, who diagnosed her as having a "large rectocele and posterior enterocele."[1]

Surgery to repair the condition took place at Ballard Community Hospital on September 20, 1988. Ten days later, Guile began suffering from extreme pain in her rectum and again went to the emergency room. A culture for bacteria revealed the presence of a streptococcus infection. Crealock referred Guile to another physician for treatment.

Guile continued having vaginal pain and began seeing a third physician. She also complained that she was unable to

---

[1] An enterocele is "a hernia containing a portion of the intestines". A rectocele is "a bulging of the rectum into the vagina". *Webster's Third New International Dictionary* 757, 1899 (1986).

engage in sexual intercourse. In 1990, she underwent corrective surgery because, as Guile alleges, Crealock had sewn up the vaginal wall too tightly.

On September 6, 1991, Guile filed an action against Crealock and Ballard Community Hospital, alleging that they breached their duty to adequately perform her surgery. According to the schedule set by the trial court, the cutoff date for disclosure of possible primary witnesses was set for November 12, 1992. In September 1991 and November 1991, Crealock and Ballard sent Guile interrogatories requesting, among other things, the identity of any expert witnesses she expected to call at trial. Guile answered that she was "currently compiling this information" and that it would be "provided prior to the date specified in the court's scheduling order for listing witnesses."

On January 9, 1992, the trial court considered Ballard's motion for summary judgment. The court ordered that the motion be renoted for February 7 and granted unless Guile produced "competent expert testimony as to the hospital's breach of the standard of care and its causal connection to plaintiff's injuries" by February 4, 1992. On January 13, 1992, Crealock also moved for summary judgment. On February 4, 1992, Guile submitted the affidavit of Dr. Sherman W. Meyer, an osteopath licensed in Arizona, in opposition to the motions. On February 7, 1992, the trial court granted summary judgment to both defendants. Guile appeals.

We first determine whether Crealock's and Ballard's motions for summary judgment were sufficient to shift the burden of proof to Guile.

A defendant can move for summary judgment in one of two ways. First, the defendant can set out its version of the facts and allege that there is no genuine issue as to the facts as set out. *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 916, 757 P.2d 507 (1988). Alternatively, a party moving for summary judgment can meet its burden by pointing out to the trial court that the nonmoving party lacks sufficient evidence to support its case. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182

(1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). In this latter situation, the moving party is not required to support its summary judgment motion with affidavits. *Young*, at 226. However, the moving party must identify those portions of the record, together with the affidavits, if any, which he or she believes demonstrate the absence of a genuine issue of material fact. *White v. Kent Med. Ctr., Inc.*, 61 Wn. App. 163, 170, 810 P.2d 4 (1991) (citing *Celotex*, 477 U.S. at 323; *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989)).

In *Young*, the plaintiff's son suffered permanent brain damage as a result of a drug he had been taking for his acute asthma. *Young*, at 218. The defendants moved for summary judgment on two grounds. First, they argued that the action was barred by the statute of limitation. Second, they submitted affidavits establishing that the plaintiff received adequate treatment while under their care. *Young*, at 220, 226. The plaintiff responded with an affidavit from a pharmacist, stating that the physicians did not meet the required standard of care. *Young*, at 220. The trial court concluded that the action was barred by the statute of limitation and that the plaintiff's affidavit failed to raise genuine issues of material fact. *Young*, at 220. The plaintiff appealed and the case was certified to the Supreme Court. *Young*, at 218.

The Supreme Court affirmed the summary judgment in favor of the medical defendants. *Young*, at 231. The court adopted the *Celotex* standard, set forth above, which allows a defendant to move for summary judgment by pointing out that the plaintiff lacks competent medical evidence to make out a prima facie case of medical malpractice. *Young*, at 225. The court then concluded that the plaintiff lacked competent medical evidence because "a pharmacist is not competent to testify on the physician's standard of care for treatment using medication." *Young*, at 230. The court also noted that the defendants' affidavits in support of their summary judg-

ment motions, although unnecessary under the *Celotex* rule, demonstrated that the plaintiff received adequate treatment while under their care. *Young*, at 226.

In the present case, Guile argues that Crealock's and Ballard's motions for summary judgment were insufficient to establish the absence of a genuine issue of material fact. First, Guile argues that the standard adopted by the court in *Young* was "merely dicta", and that the proper standard for judging the sufficiency of a summary judgment motion should be as set forth in *Hash v. Children's Orthopedic Hosp. & Med. Ctr., supra,* and *Parkin v. Colocousis*, 53 Wn. App. 649, 769 P.2d 326 (1989). In addition, she argues that, as a matter of policy, her lack of an expert witness at such an early stage of the proceedings should not be grounds for dismissal of her case, especially since the cutoff date for disclosure of primary witnesses had not yet passed.

We agree with Guile that the standard set forth in *Hash* and *Parkin* requires a different showing than the standard set forth in *Young*. However, by adopting *Celotex Corp. v. Catrett, supra, Young* provides defendants with an alternate means of moving for summary judgment. Consequently, a defendant moving for summary judgment now has a choice: The defendant can attempt to establish through affidavits that no material factual issue exists or, alternatively, the defendant can point out to the trial court that the plaintiff lacks competent evidence to support an essential element of his or her case. *Young*, at 225 & n.1; *White*, at 170. If a defendant chooses the latter alternative, the requirement of setting forth specific facts does not apply. The reason for this result is that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

In the present case, both Ballard and Crealock properly pointed out to the trial court that Guile lacked competent medical evidence to establish her case. Because they moved for summary judgment based on Guile's lack of evidence,

they were not required to support their summary judgment motions with affidavits.[2] *Young*, at 226.

■ Guile attempts to distinguish *Young* on the ground that the defendants in that case moved for summary judgment at trial, whereas here the defendants moved for summary judgment more than a year before the trial date. She argues that it is unfair to require a plaintiff to retain an expert at such an early stage in the proceedings. However, if a nonmoving party needs more time to obtain expert witnesses or otherwise respond to a summary judgment motion, CR 56(f) allows the court to order a continuance.[3] *See Celotex*, at 326 ("Any potential problem with such premature motions can be adequately dealt with under Rule 56(f), which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." (Footnote omitted.)).

When Ballard initially moved for summary judgment on January 9, 1992, the record indicates that Guile requested a continuance. The trial court gave her until February 4, 1992, to produce an expert witness, at which time she submitted Dr. Meyer's affidavit. Because she did not move for another continuance or otherwise indicate to the trial court that she needed more time to produce an expert witness, she cannot now claim that the trial court granted the summary judgment motions prematurely. If she needed additional time, the proper remedy would have been to request another continuance from the trial court. Because she failed to do this, we agree with the defendants that she is precluded from

---

[2]Because we conclude that the defendants were not required to support their motions with affidavits, we do not reach the issue of whether Crealock's affidavit was sufficient under *Hash* and *Parkin* to shift the burden of proof to Guile.

[3]CR 56(f) provides:

"Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

raising this issue on appeal.[4] To hold otherwise would constitute an unwarranted encroachment on the trial court's discretion to dismiss cases which fail to raise genuine issues for trial.

We next decide whether the affidavit of Dr. Meyer was sufficient to defeat Ballard's and Crealock's motions for summary judgment.

In a medical malpractice case, expert testimony is generally required to establish the standard of care and to prove causation. *Harris v. Groth*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983). Thus, a defendant moving for summary judgment can meet its initial burden by showing that the plaintiff lacks competent expert testimony. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 226-27, 770 P.2d 182 (1989). The burden then shifts to the plaintiff to produce an affidavit from a qualified expert witness that alleges specific facts establishing a cause of action. *Young*, at 226-27. Affidavits containing conclusory statements without adequate factual support are insufficient to defeat a motion for summary judgment. CR 56(e);[5] *Ruffer v. St. Frances Cabrini Hosp.*, 56 Wn. App. 625, 628, 784 P.2d 1288, *review denied*, 114 Wn.2d 1023 (1990); *Vant Leven v. Kretzler*, 56 Wn. App. 349, 356, 783 P.2d 611 (1989).

In *Vant Leven*, the plaintiff sued her doctor for failing to remove a disc fragment during back surgery. The doctor moved for summary judgment, submitting an affidavit and hospital records establishing that he complied with the applicable standard of care. *Vant Leven*, at 351. In response, the plaintiff claimed that summary judgment was

---

[4]Contrary to Guile's contentions, the discovery schedule does not restrict the trial court's ability to amend time lines for the disclosure of evidence or to grant summary judgment when a motion is properly brought. The schedule is merely intended to help the trial court manage the progress of a particular case.

[5]CR 56(e) provides, in pertinent part: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

26

improper because her expert witness was unable to give an opinion regarding her condition until the defendant answered the plaintiff's interrogatories. *Vant Leven*, at 351. The trial court granted the defendant's motion and the plaintiff moved for reconsideration, attaching an affidavit from her expert witness, a physician, stating that it was "more probable than not" that the defendant's conduct fell below the applicable standard of care. *Vant Leven*, at 351. The Court of Appeals affirmed the trial court's order, holding that this affidavit was insufficient to raise a material factual issue because the physician failed to identify any facts supporting his conclusion. *Vant Leven*, at 356.

In the present case, Dr. Meyer's affidavit likewise failed to identify specific facts supporting his conclusion that Crealock negligently performed Guile's surgery. Dr. Meyer's affidavit summarizes his qualifications, states that he has reviewed the hospital records, and then gives the following opinion:

> Mrs. Guile suffered an unusual amount of post-operative pain, developed a painful perineal abscess, and was then unable to engage in coitus because her vagina was closed too tight. All of this was caused by faulty technique on the part of the first surgeon, Dr. Crealock. In my opinion he failed to exercise that degree of care, skill, and learning expected of a reasonably prudent surgeon at that time in the State of Washington, acting in the same or similar circumstances.

This statement is merely a summarization of Guile's post-surgical complications, coupled with the unsupported conclusion that the complications were caused by Crealock's "faulty technique". It does little more than reiterate the claims made in Guile's complaint.[6] *See* CR 56(e). In addition, negligence cannot be inferred from the mere fact that Guile suffered from complications following her surgery. *See Watson v. Hockett*, 107 Wn.2d 158, 161, 727 P.2d 669 (1986) ("[A] doctor will not normally be held liable under a fault based system simply because the patient suffered a bad result."

---

[6]Moreover, Dr. Meyer's affidavit is silent regarding any liability of Ballard for the alleged malpractice. Therefore, Ballard is correct that Guile produced no competent evidence to support her claim against it.

(Footnote omitted.)). For these reasons, we conclude that Dr. Meyer's affidavit was insufficient to defeat the defendants' motions for summary judgment.[7]

To summarize, a defendant can move for summary judgment by either (1) pointing out to the trial court that the plaintiff lacks competent evidence to support his or her case, or (2) establishing through affidavits that no genuine issue of material fact exists. The defendants in this case met their burden by showing that Guile lacked competent medical evidence to support her case. Guile was then required to rebut this showing by producing an affidavit from a competent expert that alleged specific facts establishing a cause of action. Because the affidavit she presented from Dr. Meyer lacked adequate factual support, she failed to meet this burden.

The orders of the trial court are affirmed.

PEKELIS, A.C.J., and KENNEDY, J., concur.

Review denied at 122 Wn.2d 1010 (1993).

---

[7]Ballard and Crealock also argue that Dr. Meyer is not qualified to testify regarding the standard of care owed by an obstetrician/gynecologist in Washington. However, because we conclude that the affidavit is factually insufficient, we do not reach this issue.