# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ESTATE OF DOUGLAS E. KAFKA, JR.,)
KRISTEN M. KAFKA, individually and )
as the personal representative for the )
Estate of Douglas E. Kafka, Jr., )
DOUGLAS E. KAFKA, SR., and SUSAN )
G. KAFKA, as individuals and for the )
marital community, )
                           )
         Appellants, )
                           )
         v. )
                           )
PROVIDENCE HEALTH & SERVICES, )
an active Washington corporation; )
PROVIDENCE HEALTH & SERVICES )
WESTERN WASHINGTON, an active )
Washington corporation, PROVIDENCE )
EVERETT MEDICAL CENTER, an )
active Washington corporation, and )
"Does" 1 through 40, inclusive, )
                           )
         Respondents. )

No. 73327-3-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: May 23, 2016

TRICKEY, J. — In this medical malpractice case, the trial court granted Providence Health & Services' summary judgment motion and denied the Kafkas' motion for a continuance and their later motion for reconsideration. The motion for reconsideration included a new expert witness declaration. The Kafkas appeal, claiming, among other things, that the trial court erred by denying their motion for reconsideration. Providence argues that the new expert witness declaration was untimely, that it is not newly discovered evidence, and that it does not raise a genuine issue of material fact.

In <u>Keck v. Collins</u>, the Washington Supreme Court held that a trial court must apply the <u>Burnet v. Spokane Ambulance</u>, 131 Wn.2d 484, 933 P.2d 1036

(1997), factors in ruling on a motion to exclude untimely evidence submitted in response to a summary judgment motion. 184 Wn.2d 358, 362, 357 P.3d 1080 (2015). We hold that Keck requires a trial court to consider the Burnet factors in excluding untimely evidence submitted in support of a motion for reconsideration as well. Here, the trial court did not state on the record or in its order denying reconsideration whether it considered or excluded the new expert witness declaration. Applying Keck here, it would have been error for the trial court to exclude the expert witness declaration without analyzing the Burnet factors. 184 Wn.2d at 369. Because we agree with the Kafkas that the expert witness declaration raises a genuine issue of material fact, we cannot say that excluding it or not considering it was harmless error. Therefore, we reverse and remand for further proceedings.

## FACTS

In March 2010, Douglas E. Kafka, Jr. was admitted to Providence Regional Medical Center in Everett, Washington for an abscess in his left thigh, which he had caused by injecting morphine. Providence suspected that he was continuing to use drugs while at the hospital. To prevent his drug use, Providence restricted Douglas, Jr.'s[1] visitors and created a "Master Care Plan" to make sure that Douglas, Jr. was taking all his prescribed medications at the appropriate time.[2]

In April 2010, while still at Providence, Douglas, Jr. died from respiratory and cardiac arrest caused by "accidental acute multidrug intoxication from

---

[1] There are several members of the Kafka family involved in this appeal. For clarity, we refer to them collectively as the Kafkas and use their first names to refer to individuals. We intend no disrespect.
[2] Clerk's Papers (CP) at 32, 60, 265.

oxycodone and diphenhydramine."[3]

Douglas E. Kafka, Sr. and Susan Kafka, Douglas, Jr.'s parents, and Kristen Kafka, Douglas Jr.'s sister and the personal representative of his estate, alleged that Providence negligently caused Douglas Jr.'s death. Acting pro se, they filed suit against Providence in April 2014.[4]

In September 2014, Providence filed its first motion for summary judgment, noted for hearing on October 14, 2014. When Douglas, Sr. appeared at the October 14 hearing without representation, the trial court continued the hearing until November 14. On the day of the November 14 hearing, their first attorney filed a notice of appearance on behalf of the Kafkas. Providence renoted the motion for November 25, 2014.

On November 24, 2014, their attorney filed a motion for a continuance and a response to the motion for summary judgment on behalf of the Kafkas. His response included declarations from Kristen and Douglas, Sr., describing their efforts to secure expert testimony from Barbara Baggenstos, an advanced registered nurse practitioner. Providence agreed to strike its November 25, 2014 motion. On December 5, 2014, he filed a notice of intent to withdraw, effective December 15. With the agreement of the Kafkas, Providence re-noted the summary judgment hearing for February 5, 2015.

On January 22, 2015, a second attorney filed a limited notice of appearance for "plaintiffs Estate of Douglas E. Kafka, Jr., et al." and moved to continue the

---

[3] CP at 33.
[4] The Kafkas requested mediation with Providence, which tolled the statute of limitations for their claims.

summary judgment hearing noted for February 5.[5] He stated, in later declarations, that he had not met with Kristen, the personal representative of Douglas, Jr.'s estate, until February 2, 2015. The Kafkas did not confirm their motion to continue, and it was stricken.

At the February 5, 2015 summary judgment hearing, the Kafkas moved orally for a continuance, arguing that they had a new expert reviewing the case and needed time to obtain her declaration. The court denied their motion and granted summary judgment to Providence. There is no record of that hearing.

On February 17, 2015, the Kafkas moved for reconsideration of the trial court's grant of summary judgment to Providence and denial of its motion for a continuance. They did not file an expert declaration with their motion, but informed the court that they had an expert who was reviewing the case and would testify on their behalf. On February 24, 2015, the Kafkas filed a reply to Providence's response to their motion, informing the court that the expert they had identified was withdrawing from the case. On March 2, 2015, the Kafkas filed a declaration from Karen Wanek, a registered nurse, as an expert witness. On March 3, 2015, the court entered an order denying the Kafkas' motion for reconsideration. On the morning of March 4, 2015, Providence moved to strike Wanek's declaration. The Kafkas filed another reply brief in support of Wanek's declaration that afternoon. The Kafkas appeal.

---

[5] CP at 235-36.

4

ANALYSIS

Service of Motion for Summary Judgment

The Kafkas claim that Providence did not properly serve Kristen with its motion for summary judgment. They argue that this improper service impacts Providence motion for summary judgment in two ways. First, it shows that the court should have granted them a continuance because it provides a good reason for their delay in securing expert testimony. Second, it is an independent basis for denying summary judgment because there were genuine disputes about whether service was proper. We reject both arguments because service was proper.

Civil Rule 5 governs the service of summary judgment motions. CR 5(a). It provides that, after service of the initial complaint, a party may serve another party by mailing the pleadings to the opposing party's last known address. CR 5(b)(1). To effect service by mail, the party must deposit the pleadings "in the post office, addressed to the person on whom they are being served, with the postage prepaid." CR 5(b)(2)(A). When withdrawing from representing a client, an attorney must file a notice of intent to withdraw that includes "the names and last known addresses of the persons represented by the withdrawing attorney." CR 71(c)(1).

The application of court rules to a particular set of facts is a question of law that this court reviews de novo. Brower v. Pierce Cty., 96 Wn. App. 559, 562, 984 P.2d 1036 (1999).

The only facts in dispute here are whether the Kafkas informed Providence that Kristen did not live with her parents. The Kafkas claim that Douglas, Sr. told Providence's attorneys that Kristen did not live with him and Susan in October

2014 and that Kristen told Providence's attorneys that she did not live with her parents in November 2014. Providence claims this never happened.

But neither party disputes that the Kafkas' first attorney filed his notice of intent to withdraw in *December* 2014, after both alleged disclosures to Providence's attorney. That notice listed one address for all the Kafkas and directed that "all future pleadings in this matter should be directed to them at said address."[6] Therefore, Kristen's last known address of record was the same as her parents'. As stated in its certificate of service, Providence mailed a copy of its motion for summary judgment to all three Kafkas at that address. Accordingly, Providence properly served all the Kafkas with its motion for summary judgment.

### Continuance of Summary Judgment Motion

The Kafkas contend that the trial court abused its discretion when it denied their motion to continue Providence's summary judgment hearing. Specifically, they argue that the court should have allowed them more time to obtain the affidavit of an identified expert witness. We reject this argument because the Kafkas had been in contact with that expert witness for months and did not offer a good reason for their delay in obtaining her affidavit.

When a party moves for summary judgment, the opposing party may request a continuance if it needs additional time to obtain affidavits that will justify its opposition to summary judgment. CR 56(f). The party should support its motion for a continuance with affidavits that provide a reason why the party is unable to obtain the witness's affidavit in time for summary judgment. CR 56(f). "[T]he court

---

[6] CP at 260.

has a duty to give the party a reasonable opportunity to complete the record before ruling on the case." Coggle v. Snow, 56 Wn. App. 499, 507, 784 P.2d 554 (1990). But it "may deny a motion for a continuance when (1) the moving party does not offer a good reason for the delay in obtaining the evidence; (2) the moving party does not state what evidence would be established through the additional discovery; or (3) the evidence sought will not raise a genuine issue of fact." Coggle, 56 Wn. App. at 507.

In Coggle v. Snow, this court held that the trial court abused its discretion by denying a motion for continuance when the plaintiff had a good reason for delay. 56 Wn. App. at 508. There, the plaintiff's original counsel, who was retiring, asked another attorney to take over the case shortly after the defendant filed for summary judgment. Coggle, 56 Wn. App. at 501-02. Within a few days, the plaintiff's new attorney filed a motion to continue the summary judgment hearing accompanied by his declaration that he had prepared a declaration for the plaintiff and that an expert had examined the plaintiff but needed more time to complete his affidavit. Coggle, 56 Wn. App. at 502. The trial court denied his motion. Coggle, 56 Wn. App. at 503. The Court of Appeals reversed, holding that the short time between the new attorney's appearance and the motion for summary judgment was a good reason for the plaintiff's inability to obtain affidavits from the plaintiff and expert. Coggle, 56 Wn. App. at 508. The court also noted that the trial court should not penalize the plaintiff "for the apparently dilatory conduct of his first attorney." Coggle, 56 Wn. App. at 508.

In Butler v. Joy, even the failure to comply with the strict rules of CR 56(f)

7

was not fatal to the plaintiff's motion for a continuance. 116 Wn. App. 291, 300, 65 P.3d 671 (2003). There, the plaintiff had received two continuances on the defendant's motion for summary judgment, one while she was pro se and one after retaining counsel. Butler, 116 Wn. App. at 294. Her attorney withdrew. Butler, 116 Wn. App. at 294. Then the defendant filed a new motion for summary judgment on different grounds than the earlier motion. Butler, 116 Wn. App. at 294. The plaintiff retained a new attorney one day before the summary judgment hearing. Butler, 116 Wn. App. at 299. The attorney moved orally for a continuance at the hearing. Butler, 116 Wn. App. at 299. The trial court denied the motion. Butler, 116 Wn. App. at 295.

Again, the Court of Appeals reversed. Butler, 116 Wn. App. at 299-300. It acknowledged that the attorney's motion did not satisfy CR 56(f)'s requirements but held that the trial court should have granted it because the plaintiff's attorney "deserved an opportunity to prepare a response." Butler, 116 Wn. App. at 299-300. The court did not want the plaintiff to be "hobbled by legal representation that has had no time." Butler, 116 Wn. App. at 300.

This court reviews a trial court's decision to deny a continuance for an abuse of discretion. Coggle, 56 Wn. App. at 504. It is an abuse of discretion if the court bases its decision on untenable grounds or for untenable reasons. Coggle, 56 Wn. App. at 507.

Here, the Kafkas' motion to continue the summary judgment hearing is difficult to review because their attorney moved orally for a continuance at the summary judgment hearing, which was not reported or recorded. It appears that

their second attorney argued he had learned of a new theory of liability only three days before the summary judgment hearing, when he met with Kristen for the first time. Before that, they had pursued a theory of liability based on Providence's allegedly negligent prescription of OxyContin. The expert retained to support that theory did not find any negligence.

The new theory, which the Kafkas describe as a "systems error" theory, was that the hospital staff failed to monitor Douglas, Jr.'s use of his prescribed medications.[7] They argued that they needed a continuance to secure the affidavit from an expert, Nurse Baggenstos, whose affidavit would support that theory. On appeal, the Kafkas repeat their claim that the new theory of liability was not evident until three days before the February 5 summary judgment hearing.

But, although this theory of liability, and the accompanying expert may have been new to their attorney, they were not new to the Kafkas themselves. The record shows that both Douglas, Sr. and Kristen were in contact with Baggenstos in November 2014. In a declaration she filed with the court in November 2014, Kristen identified both this theory of liability and Baggenstos as a possible expert. Douglas, Sr. was also aware of Baggenstos and declared in November that they had retained Baggenstos as an expert witness. By the end of November, the Kafkas had already provided Baggenstos with most of Douglas, Jr.'s medical records and expected Baggenstos to issue a favorable report.

Two months after the Kafkas filed their declarations, their second attorney appeared on their behalf. The Kafkas do not explain why they did not inform him

---

[7] CP at 169; Br. of Appellant at 28.

9

about Baggenstos as soon as they retained him on January 22, 2015.[8] They also do not explain why neither they nor their first attorney secured an affidavit from Baggenstos earlier.

Providence had consistently pursued summary judgment on the basis that the Kafkas had no medical expert testimony to support their claim. Therefore, since September 2014, the Kafkas had reason to know that they needed to secure expert testimony. Their second attorney sought expert testimony on their behalf, focusing on a theory that Providence had negligently prescribed medication to Douglas, Jr. He switched to the systems error theory when the negligent prescription theory appeared less viable. Accordingly, their delay in contacting Baggenstos was due to a strategic decision, rather than retaining counsel at the eleventh hour.

In both Coggle and Butler, the court wanted to prevent plaintiffs from suffering as a result of poor legal representation. Here, the Kafkas' own actions caused them to be unprepared for Providence's motion. They failed to follow up with Baggenstos after their first attorney withdrew and failed to timely provide their second attorney with information about Baggenstos.

The attorney's actions in this case are also distinguishable from those in Coggle and Butler. Unlike the attorney in Coggle, the Kafkas' attorney did not supply the court with affidavits to support the Kafkas' motion for a continuance. He moved for a continuance orally at the summary judgment hearing. Unlike the

_____

[8] Their attorney argues that he learned about Baggenstos when he finally met with Kristen, "who had more complete knowledge of the case and was in contact with a potential expert." Br. of Appellant at 21-22. But Douglas, Sr.'s November 2014 declaration shows that he also knew about Baggenstos.

attorney in Butler, he had weeks to respond to Providence's motion for summary judgement. He could have moved for a continuance earlier and supported it with affidavits, as required by CR 56(f).

Another difference is the Kafkas' familiarity with the basis of the summary judgment motion. The defendant's second motion for summary judgment in Butler was on new grounds. 116 Wn. App. at 294. Providence's February 5, 2015 motion for summary judgment, on the other hand, was the same as it had been in October 2014. The Kafkas had known the substance of Providence's argument since Providence served them with the original motion in September; they were not forced to respond quickly to brand new legal arguments.

In short, the Kafkas' failure to provide a good reason for their inability to secure an affidavit from Baggenstos before Providence's summary judgment hearing justifies the trial court's decision to deny the Kafkas' motion for a continuance. The trial court did not abuse its discretion.

The Kafkas also argue that the court erred because Providence did not show that it would be prejudiced by the continuance. In the cases the Kafkas cite for this argument, the moving party showed that it met the criteria for obtaining a continuance first. See, e.g., Coggle, 56 Wn. App. at 508. The Kafkas did not meet that criteria.

## Motion for Reconsideration

The Kafkas argue the trial court abused its discretion by denying their motion for reconsideration. Specifically, they argue that the trial court should have considered the declaration of Nurse Wanek as newly discovered evidence that

11

raised a genuine issue of material fact.[9]   Providence argues that Wanek's declaration was untimely and does not qualify as newly discovered evidence. Providence further argues that, even with Wanek's declaration, it is entitled to summary judgment because the declaration does not raise a genuine issue of material fact.

### Untimely Declaration

Excluding "evidence that would affect a party's ability to present its case," because the party has failed to comply with discovery rules, "amounts to a severe sanction." Keck, 184 Wn.2d at 368.  Before imposing that sanction, the trial court must consider, on the record, whether the discovery violation was willful, if the other party will suffer substantial prejudice because of the violation, and if a lesser sanction would suffice.  Burnet, 131 Wn.2d at 494.  Appellate courts cannot perform a Burnet analysis when the trial court omits it.  Jones v. City of Seattle, 179 Wn.2d 322, 338, 314 P.3d 380 (2013).

This court reviews a trial court's decision to exclude untimely evidence for an abuse of discretion, subject to the use of the Burnet factors.  Keck, 184 Wn.2d at 368.

The court held in Keck that Burnet applied to a case where the court excluded as untimely a declaration attached to a motion opposing summary

_____

[9] The Kafkas assert in their reply brief that they are seeking reconsideration on the basis of abuse of discretion, error of law, newly discovered evidence, no evidence or inference to justify the decision, and failure to do substantial justice, citing CR 59(a)(1), (4), (7), and (9), respectively.  The Kafkas' main argument was that Wanek's declaration was newly discovered evidence.  They mention that the grant of summary judgment was contrary to law because they had established grounds for a continuance, and that summary judgment was improper because of the disputed service.  Both are addressed above.

12

judgment. 184 Wn.2d at 368. Under Keck, a trial court must consider the Burnet factors when deciding whether to exclude evidence submitted in support of a motion for reconsideration.

Here, it appears that the trial court did not consider Wanek's declaration, though it did not explicitly exclude it.

No one disputes that Wanek's declaration was untimely. But the Kafkas filed it while the motion was still pending. Therefore, the court should have considered the declaration, or after considering it in light of the Burnet factors, explicitly excluded it. There is no record of the court considering the willfulness of the violation, the potential prejudice to Providence, and the availability of a lesser sanction. Therefore, it would have been error for the court to exclude Wanek's declaration as untimely.

Erroneously excluding Wanek's declaration would be reversible error unless the error was harmless. In re Dependency of M.P., 185 Wn. App. 108, 118, 340 P.3d 908 (2014). The error would be harmless if Wanek's declaration was not sufficient to raise a genuine issue of material fact.

*Summary Judgment with Wanek Declaration*

Providence argues that, even with Wanek's declaration, the Kafkas have not produced competent medical evidence to survive summary judgment. Specifically, they argue that Wanek's declaration did not show that any breach by Providence caused Douglas, Jr.'s death on a more probable than not basis. We disagree.

Courts shall grant summary judgment to a party when there is no genuine

issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We review summary judgment de novo, and view "all facts and reasonable inferences in the light most favorable to the nonmoving party." Elcon Const., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

To establish medical malpractice, the plaintiff must prove that the "health care provider[s] failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider" and that the providers' failure to do so proximately caused the injury. RCW 7.70.040.

In Keck, the trial court found that an expert's affidavit did not establish a prima facie case of medical malpractice. 184 Wn.2d at 367. There, the expert described the surgeons' actions and outlined other steps the surgeons could have taken, implying that a failure to do so fell below the standard of care. Keck, 184 Wn.2d at 371. The Supreme Court held that, when taken in the light most favorable to the plaintiff, this was sufficient to establish the standard of care and breach. Keck, 184 Wn.2d at 370-71. The court distinguished this declaration from those containing conclusory remarks but lacking any description of how the doctors had acted negligently or any factual basis for the opinions. Keck, 184 Wn.2d at 366-67 (citing Guile Ballard Cmty. Hosp., 70 Wn. App. 18, 851 P.2d 689, review denied, 122 Wn.2d 1010, 863 P.2d 72 (1993)).

Here, Wanek declared that she had reviewed the records in the case, summarized Douglas, Jr.'s history with Providence as she understood it, and then opined that the nurses had breached the standard of care and that that breach

caused Douglas, Jr.'s death:

> [I]t is clear that the level of care provided by the nursing staff responsible for Mr. Kafka's care deviated from and fell below the minimum accepted standard of care required of nurses in that they failed to exercise the degree of skill, care, and learning expected for a patient like Douglas Kafka as follows:
>
> . . . Based on the autopsy findings it is clear that the hospital's actions or lack thereof allowed Mr. Kafka to obtain and self-administer medications in what ultimately proved to be a fatal dose.
>
> According to the Institute of Medicine, 'Patients must rely on health care professionals and institutions for their safety and well-being." It was the responsibility of Providence Regional Medical Center to provide a safe environment for Mr. Kafka. Despite a clear understanding of the risks, the hospital utterly failed to take basic measures to assure Mr. Kafka's safety, which ultimately led to his death.[10]

The declaration shows that Wanek believes that Douglas, Jr.'s death would have been prevented if the nursing staff had implemented a plan to control Douglas, Jr.'s access to medication earlier and actually carried it out. It is also clear that she believes a failure to do both of those was a breach of the standard of care. Relying on this declaration, a jury could find that Providence had negligently caused Douglas, Jr.'s death. Therefore, there are disputed issues of material fact and Providence is not entitled to summary judgment.

Providence argues that Wanek's declaration does not establish causation because it does not "reasonably exclude as a possibility every other hypothesis."[11] That is not a requirement at summary judgment. Providence's reliance on O'Donoghue v. Riggs to support this argument is misplaced. 73 Wn.2d 814, 824, 440 P.2d 823 (1968). That case does not hold that an expert must list all other possible causes of an injury in his or her declaration and then exclude them to

---

[10] CP at 32-33.
[11] Br. of Respondent at 17.

15

survive summary judgment. Instead, it held that an expert did not establish causation with the required level of medical certainty when he could not, *during cross-examination at trial*, exclude alternate theories put forth by the defense. O'Donoghue, 73 Wn.2d at 823. There was no indication that this is required at summary judgment. O'Donoghue, 73 Wn.2d at 823-24.

*Newly Discovered Evidence*

But an analysis of the merits of Wanek's declaration assumes that the trial court would have considered it. Although the trial court abused its discretion by excluding the declaration on the grounds that it was untimely, it could still have exercised its discretion to exclude it as not newly discovered.

The court may reconsider and vacate an order or decision upon motion if the aggrieved party shows that there is "[n]ewly discovered evidence, . . . which the party could not with reasonable diligence have discovered and produced at the trial" that "materially affect[s its] substantial rights." CR 59(a)(4). In order for evidence to qualify as newly discovered, the party offering it must not have been able to discover it before the decision "'by the exercise of due diligence.'" Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 88-89, 60 P.3d 1245 (2003) (internal quotation marks omitted) (quoting Holaday v. Merceri, 49 Wn. App. 321, 329, 742 P.2d 127 (1987)). "The decision to consider new or additional evidence presented with a motion for reconsideration is squarely within the trial court's discretion." Martini v. Post, 178 Wn. App. 153, 162, 313 P.3d 473 (2013).

"Where a party believes that proffered evidence is not properly before the trial court, it must move the trial court to strike such evidence from the record."

Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wn. App. 743, 755, 162 P.3d 1153 (2007). If the trial court denies that motion, the aggrieved party must assign error to the evidentiary ruling to challenge its inclusion in the record on appeal. Jacob's Meadow, 139 Wn. App. at 756. The Court of Appeals can review evidentiary rulings, but it cannot make its own evidentiary rulings. Jacob's Meadow, 139 Wn. App. at 756.

The Kafkas argue that Nurse Wanek's declaration is newly discovered evidence because it is "based on a 'new and previously unavailable liability theory.'"[12] Providence objected to Wanek's declaration on the grounds that it was not newly discovered evidence two days after the Kafkas filed it. The trial court denied the Kafkas' motion for reconsideration on the day in between. It never ruled on Providence's objections to the motion.

Because we cannot make evidentiary rulings, we do not decide whether Wanek's declaration is newly discovered evidence.

We reverse and remand for further proceedings consistent with this opinion.

_____Trickey, ACJ_____

WE CONCUR:

_____          _____

---

[12] Br. of Appellant at 42 (quoting CP at 56).