IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

HEIDI COLLINS & DARYL COLLINS,

Appellants,

v.

SWEDISH MEDICAL CENTER,

Respondent.

No. 85836-0-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, A.C.J. — Heidi Collins and her spouse appeal the summary judgment dismissal of their medical malpractice claims against Swedish Medical Center resulting from injuries she asserts occurred after a routine medical procedure. Collins did not provide competent expert testimony necessary to establish a violation of the applicable standard of care, and thus failed to establish a prima facie case under RCW 7.70.040. As the evidence is insufficient to create a genuine issue of material fact as to the claim of medical negligence, summary judgment was proper.

FACTS

On October 5, 2022, Heidi Collins and her husband[1] filed a complaint against Swedish Medical Center and alleged that, on October 10, 2018, Heidi was

---

[1] The Collinses brought suit against Swedish Medical Center as a marital community, but the cause of action relates only to Heidi, therefore, we refer to the appellants collectively as "Collins." However, when attribution to Heidi individually is necessary for factual clarity, we will use her first name. No disrespect is intended.

"injured through the negligence of Swedish agents/employees" and the "injury was not diagnosed through the continuing negligence of Swedish agents/employees." The complaint provided no further allegations; the factual circumstances were not addressed and the claimed injury was not identified. On December 2, 2022, Swedish served interrogatories on Heidi and requested the facts supporting her claims, including identifying the allegedly negligent acts or omissions of Swedish and the injuries that Heidi purportedly suffered as a result.

On March 17, 2023, Collins provided answers to the interrogatories, which were primarily comprised of narrative explanations from Heidi's perspective. Collins alleged that, on October 10, 2018 at Swedish Medical Center in Issaquah, Heidi had a colonoscopy procedure after which, while she was "still under large amounts of anesthesia," a nurse "awakened [her] and asked [her] to move." Heidi described the incident as follows:

> I was incredibly dizzy and out of it, and remember feeling a monumental struggle just to sit up and swing my legs one by one over the right side of the bed. No help was given me as I struggled to move. I felt so incredibly tired; it was a battle just to keep my eyes open and I was very wobbly in all my movements. I tried to stand up and immediately started to fall over; I reached backward for the wheelchair, but my arms were too high to reach the handles. My legs hit the wheelchair but it was not locked in position so it slid from behind me. I fell, hitting the floor heavily. My eyes closed right as I started to fall backward and I felt as though I were dreaming and flying, when I felt a HUGE amount of pressure in my lower back, buttocks, and upper thighs (pressure was worse on my right side), at which point I opened my eyes and woke up again and reali[z]ed where I was. I felt surprised to find myself on the floor—I had ALWAYS been helped with moving positions during/associated with previous (and, I was to find, subsequent) procedures by nursing staff. I tried to grab the chair seat for support from my position on the floor as I tried to stand up, and again it slipped away because it was not locked in place. As I struggled to my feet the nurse went behind me to either hold or lock the chair behind me so that I could sit—I never

- 2 -

did stand up straight but kind of aimed myself backwards into the chair. I still felt woozy, dizzy, indescribably exhausted. She wheeled me over to the bed beside the window. I stood up, again with great difficulty, and got somehow into the other bed, wondering why I'd been moved at all—I was the only patient in the room! The nurse did not report my fall and I received no care or assistance following her negligence. She did not provide any aftercare for my fall. She did not notify anyone that I had fallen. She did not discuss with me or tell me that I had fallen.

In the answers to Swedish's interrogatories, Collins did not identify any experts that they intended to call or produce any expert opinions.

On July 23, 2023, Swedish moved for summary judgment. It sought dismissal of all the claims pursuant to RCW 7.70.040 based on Collins' "failure to produce the required expert testimony establishing a breach of the applicable standard of care and that such breach was a proximate cause of each of the alleged injuries." After counsel for both parties communicated about scheduling to reach a mutually agreeable date, a hearing on the motion was set for August 25.

On August 15, Collins filed her witness list, which named two registered nurses as expert witnesses, Latonya Brumfield and Kimberly H. Lewis. Collins provided no declarations or reports from either expert. On August 21, Swedish again requested dismissal of the claims based on the lack of expert testimony regarding the applicable standard of care, breach, and proximate causation. On August 22, Collins filed an untimely response opposing Swedish's motion for summary judgment and moved under CR 56(f) to continue the hearing for three weeks. The Collins' attorney asserted that they failed to timely respond to the motion "[d]ue to human error within counsel's office" and they "sought a CR 56(f) continuance to allow counsel to assemble appropriate expert declarations."

On September 1, 2023, Collins submitted Heidi's medical records from Swedish Redmond Emergency Center dated October 10, 2018. Collins also provided two expert declarations[2] from registered nurses; one from Lewis, which was not signed, and the other from Brumfield. Lewis declared that she was "familiar with the standard of care relative to supervision of surgical patients in the recovery room. It is a national standard." Lewis based her opinion on Heidi's interrogatory responses and stated that "the recovery nurse fell below the standard of care by failing to be in a position to help her off the bed without falling and in failing to be in a position to prevent her fall." Similarly, Brumfield declared that she was "familiar with the standard of care relative to supervision of surgical patients in the recovery room. It is a national standard." Brumfield's opinion, which was also based on Heidi's description of the incident set out in her response to the interrogatories, was that "the care Plaintiff received in the recovery room fell below the standard of care." Brumfield did not explain what the Swedish recovery nurse actually did or failed to do that fell below the standard of care.

On September 5, Swedish filed a reply to Collins' untimely CR 56(f) motion and expert declarations. Swedish pointed to multiple deficiencies in both experts' declarations and argued that summary judgment was required as Collins had failed to provide expert testimony to make a prima facie showing as to the standard of care and proximate causation.

That same day, the trial court entered an order granting Collins' motion for CR 56(f) continuance and Swedish's motion for summary judgment dismissal.

---

[2] While both declarations purported to have the experts' resumes attached, Lewis' resume was not.

While the court noted that Collins failed to timely provide a response and testimony from an expert regarding the standard of care, the court found it was not a willful failure and decided to consider "the tardy expert testimony." Nonetheless, the court concluded that the expert testimony was "conclusory and speculative, with insufficient explanation of the facts relied upon and an insufficient basis to support conclusions of breach or the standard of care." The court also stated that "[e]ven if the expert opinions were admissible to establish breach of the standard of care," they still failed to establish proximate cause. Accordingly, the court dismissed Collins' claims with prejudice.[3]

Collins timely appealed.[4]

ANALYSIS

Collins assigns error to the trial court's grant of summary judgment in favor of Swedish. We review summary judgment rulings de novo and consider "the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing CR

---

[3] As Collins did not defend her claim for "failure to diagnose," it was dismissed along with the medical negligence claim.

[4] On appeal, Collins does not present argument as to the dismissal of the claim for "failure to diagnose." As this court does not consider issues on appeal that are unsupported by argument and citation to authority, we do not consider the dismissal of that cause of action. *McKee v. Am. Home Prods., Corp.*, 113 Wn.2d 701, 705, 782 P.2d 1045 (1989).

56(c)). A fact is material if the "outcome of the litigation depends" on it. *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). "We may affirm a trial court's decision on a motion for summary judgment on any ground supported by the record." *Port of Anacortes v. Frontier Indus., Inc.*, 9 Wn. App. 2d 885, 892, 447 P.3d 215 (2019).

In a motion for summary judgment, "the moving party bears the initial burden of showing the absence of an issue of material fact." *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). "A defendant moving for summary judgment in a health care professional malpractice suit can meet its initial burden by showing the plaintiff lacks competent expert testimony to sustain a prima facie case of medical malpractice." *Boyer v. Morimoto*, 10 Wn. App. 2d 506, 519-20, 449 P.3d 285 (2019). "The burden then shifts to the plaintiff to produce an affidavit from a qualified expert witness that alleges specific facts establishing a cause of action." *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993). If "the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" then summary judgment is appropriate. *Young*, 112 Wn.2d at 225 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Collins contends the evidence was sufficient to establish the standard of care and proximate cause elements of the medical negligence claim for purposes of defeating summary judgment. We disagree.

In a case premised on claims of medical negligence, plaintiffs must establish that the "injury resulted from the failure of the health care provider to follow the accepted standard of care." RCW 7.70.040(1). This requires a showing that the "health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which [they] belong[], in the state of Washington, acting in the same or similar circumstances," and that "[s]uch failure was a proximate cause of the injury complained of." RCW 7.70.040(1)(a), (b).

Our Supreme Court has "repeatedly held that 'expert testimony will generally be necessary to establish the standard of care.'" *Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 231-32, 393 P.3d 776 (2017) (internal quotations marks omitted) (quoting *Young,* 112 Wn.2d at 228). The same is true for proximate cause. *Id*. at 238. Because "expert testimony is generally required to establish the standard of care and to prove causation," "a defendant moving for summary judgment can meet its initial burden by showing that the plaintiff lacks competent expert testimony." *Guile*, 70 Wn. App. at 25.

Here, Swedish moved for summary judgment based on a lack of evidence supporting Collins' claims, specifically the absence of expert testimony as to the standard of care and proximate cause. At that point, the burden shifted to Collins who was required to "produce an affidavit from a qualified expert witness that allege[d] specific facts establishing a cause of action." *Id.* Collins failed to do so.[5]

---

[5] Collins initially asserts that "there is a serious question" as to whether expert testimony was even necessary "to establish negligence under the facts of this case." This position is meritless.

As we recently explained, the expert witness "must be qualified to express an opinion on the applicable standard of care" and their "opinion must be based on more than conjecture or speculation." *Chervilova v. Overlake Obstetricians & Gynecologists, PC*, __ Wn. App. 2d __, 543 P.3d 904, 906 (2024). Collins' experts do not meet either requirement.

To determine whether the opinion of a proffered expert satisfies the requirements to defeat a motion for summary judgment in a medical malpractice claim, "the court examines the record to determine the relevant specialty and whether the expert and the defendant practice in the same field." *Boyer*, 10 Wn. App. 2d at 521. "If the expert does not practice in Washington, we also look to see if that expert is familiar with the Washington standard of care." *Chervilova*, 543 P.3d at 906. Familiarity with the Washington standard of care can be established by providing "admissible testimony that a national standard of care exists in this state and that the defendant physician violated the national standard of care." *Id*. But, an out-of-state expert must disclose *how* they know Washington's standard of

---

Collins relies on a single statement from *Harris v. Robert C. Groth, MD, Inc.* where the court noted, "Medical facts in particular must be proven by expert testimony unless they are 'observable by [a layperson's] senses and describable without medical training.'" 99 Wn.2d 438, 449, 663 P.2d 113 (1983) (alteration in original) (quoting *Bennett v. Dep't of Lab. & Indus.*, 95 Wn.2d 531, 533, 627 P.2d 104 (1981)). Collins does not explain how the circumstances here rendered expert testimony unnecessary for either the standard of care or causation. "Absent exceptional circumstances," *Harris* held that "expert testimony will be necessary" to show both the standard of care and causation. *Id*. at 451.

Because Collins fails to explain how the facts here warrant departure from the expert testimony requirement, we reject this bald contention. Moreover, even assuming arguendo that an expert opinion was not necessary for a prima facie showing that the applicable standard of care was violated here, such testimony is plainly needed to show proximate cause in this case.

As the trial court correctly noted, the medical record provided by Collins "does not contain reported symptoms of pain connected to the fall by common sense that would be within the experience of a layperson to diagnose or find causally related." Accordingly, we look to Collins' expert testimony to determine whether it is sufficient to support a prima facie case of medical negligence under RCW 7.70.040(1).

care equates to the national standard and "'provide some underlying support for [their] opinion that the state standard follows the national standard.'" *Id*. at 908 (quoting *Boyer*, 10 Wn. App. 2d at 524).

First, although both Lewis and Brumfield are registered nurses and thus practice in the same field as Swedish's allegedly negligent employees, neither of Collins' expert witnesses established a familiarity with the standard of care in Washington state. In their separate declarations, Lewis and Brumfield provided the exact same statement: "I am familiar with the standard of care relative to supervision of surgical patients in the recovery room. It is a national standard." Not only did they both fail to disclose how they knew that our state incorporates the national standard or provide any underlying support for that opinion, neither Lewis nor Brumfield even mention Washington state in their respective declarations. This is plainly insufficient to establish the necessary familiarity with the standard of care in Washington so as to provide an admissible expert opinion on the issue. *Id.*; *Boyer*, 10 Wn. App. 2d at 524.

Second, both of the expert witnesses' opinions regarding Swedish's purported breach of the Washington state standard of care are conclusory and fail to provide specific facts showing how it was violated here. Experts "must state specific facts showing what the applicable standard of care was and how the defendant violated it." *Reyes v. Yakima Health Dist.,* 191 Wn.2d 79, 89, 419 P.3d 819 (2018). Moreover, "the expert must link [their] conclusions to a factual basis."

*Id*. at 87. Lewis' declaration[6] states the standard of care requires the recovery nurse to be "at the patient's side" and "with the patient" as they are getting ready to stand; Lewis then concludes that the recovery nurse's conduct fell below the standard of care by "failing to be in a position to help [Heidi] off the bed without falling and in failing to be in a position to prevent her fall." Brumfield simply provides a general standard for watching patients in a recovery room and concludes that, "[b]ased on the Plaintiff's version of events, the care she received fell below the standard." Neither expert identifies specific facts that support their respective opinions as to the standard of care or breach thereof. Viewed in the light most favorable to Collins as the nonmoving party, the evidence does not establish any question of material fact as to a violation of the applicable standard of care under RCW 7.70.040(1). Accordingly, summary judgment dismissal was proper.

Affirmed.

WE CONCUR:

---

[6] Lewis did not sign her declaration. The trial court considered the unsigned declaration for purposes of summary judgment and directed Collins to file the signed version within five days of the order. However, the record on appeal does not include a signed version of Lewis' declaration.

Accordingly, even if the testimony in Lewis' declaration could have otherwise created an issue of material fact, it does not constitute competent evidence here. *Our Lady of Lourdes Hosp. v. Franklin County,* 120 Wn.2d 439, 452, 842 P.2d 956 (1993) ("Unsigned affidavits should not be considered in ruling on summary judgment motions.")