
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ERIN PETERS, as Personal Representative of the Estate of Diana Hafer, | ) ) ) ) | No. 40648-2-III |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| HOLLY KENNER, as Personal Representative of the Estate of Raymond and Orvalla Hafer, | ) ) ) ) | |
| Respondent. | ) ) | |

LAWRENCE-BERREY, C.J. — Holly Kenner was the personal representative of both of her parents' estates. She also was the person responsible for winding up the family business, Hafer Farms, LLC. Diana Hafer,[1] wife of Randal Hafer, had a 16.66 percent interest in Hafer Farms. Diana was not a beneficiary of either Hafer estate.

Diana brought suit against the personal representative to enjoin her from using Hafer Farms' assets to fund a settlement reached between her husband and his mother's estate. Diana claimed that those assets were needed to satisfy her 16.66 percent interest in Hafer Farms. The personal representative claimed that the settlement involved not just

---

[1] Diana passed away while this case was pending. Erin Peters is the personal representative of Diana's estate. Regardless, we will refer to the appellant as Diana.

Randal, but also his wife, Diana, and the settlement accounted for Diana's 16.66 percent interest in Hafer Farms.

The trial court granted Holly Kenner's motion for summary judgment. Our de novo review of the record did not uncover any evidence that Diana is entitled to additional proceeds beyond Ms. Kenner's proposed payment. Because Diana failed to show she has a clear legal or equitable right to additional proceeds beyond the proposed payment, we affirm.

## FACTS[2]

Raymond died in 1984 and Orvalla died on October 9, 2017. Raymond and Orvalla were survived by their four children: Justin Hafer, Randal Hafer, Nathan Hafer, and Holly Kenner. Holly Kenner obtained letters testamentary and became the duly appointed personal representative to probate both estates. The estates were worth approximately $6.5 million collectively. Estate assets included real property, farming equipment, and an interest in Hafer Farms, LLC.

---

[2] Several individuals in this appeal share a surname, so we refer to them by their first names for clarity. We mean no disrespect.

At the time of Orvalla's death, the following individuals owned the following membership interests in Hafer Farms: Orvalla (33 percent); Justin and his wife Debra (16.66 percent each); and Randal and his wife Diana (16.66 percent each).

Holly Kenner, as personal representative of her parents' estates, assumed control of Orvalla's membership interest. In 2019, Ms. Kenner hired a certified public accountant (CPA) to prepare a proposed plan for distributing Hafer Farms' assets. The proposed plan projected the following distributions: Orvalla ($1,099,261); Justin and Debra ($1,007,963); and Randal and Diana ($974,028).

Ms. Kenner and Justin appointed Ms. Kenner dissolution manager of Hafer Farms. Although Diana never consented to Ms. Kenner's appointment, Ms. Kenner began to carry out the terms of the proposed liquidation in accordance with the CPA's plan.

Several distributions of Hafer Farms' assets were made to Justin and Debra and to Randal and Diana. Distributions to Randal and Diana included: irrigation pivots worth $55,000.00, a pump station valued at approximately $28,548.72, small equipment worth $45,301.38, other equipment valued at approximately $100,000.00 retained by the couple, and a check of nearly $100,000.00. Randal and Diana refused to cash the check because they did not agree to the CPA's plan.

As part of the estate administration, Ms. Kenner terminated various leases between the estates and Hafer Farms and executed a lease between the estates and a corporation owned by Justin. This led to a lawsuit between Randal and Ms. Kenner in her personal representative capacity. The parties mediated the dispute and entered into a written settlement agreement in which Ms. Kenner agreed to pay Randal $1,225,000 "from the Estate" in exchange for a "waiver and receipt of final distribution." CP at 58.

Ms. Kenner, as personal representative of the Hafer estates, filed a motion for court approval of the settlement that differed from the terms of the written settlement agreement. The proposed settlement did not indicate that the funds would come from Orvalla's estate, it included Diana and Ms. Kenner in her capacity as dissolution managers as necessary parties to the agreement, and it required Randal and Diana to waive any right to further distributions from Hafer Farms. The trial judge in that case denied the motion and no order was entered.

In early June 2023, Diana sent a letter to Ms. Kenner seeking assurances that Hafer Farms' remaining assets—approximately $300,000 in cash—would not be used to satisfy her husband's mediated settlement. In the letter, Diana asserted that Hafer Farms owed her "'several hundred thousand dollars.'" CP at 9.

4

When Ms. Kenner did not respond by the letter's deadline, Diana brought the underlying action seeking a preliminary injunction against Ms. Kenner. In the action, she sought to prevent Ms. Kenner from using Hafer Farms' cash to satisfy, in her view, an estate obligation. She claimed that unless an injunction was issued, "Ms. Kenner will be permitted to convert and commingle company assets and, in the process, tortiously interfere with [her] contractual and statutory rights to receiv[e] a distribution for her membership interest." CP at 105. Diana asserted that she had not been paid for her membership interest in Hafer Farms and was entitled to a distribution of the company's cash.

On July 31, 2023, Diana died intestate. The trial court appointed her daughter, Erin Peters, personal representative of Diana's estate.

Ms. Kenner moved for summary judgment against Diana. She claimed that the value that Randal and Diana had received, coupled with the settlement amount, would fully compensate them for their portions of the estates *and* Hafer Farms. Ms. Kenner included a table showing the planned distribution of Hafer Farms' assets and the corresponding values assigned. The table shows three columns—Justin and Debra (one-third owners), Randal and Diana (one-third owners), and the Orvalla estate (one-third owner). The table shows that Ms. Kenner intended to reimburse capital contributions

made by each of the three, and that the remaining funds would be divided evenly between the three—roughly $653,750 each.

Diana reasserted the positions set forth in her complaint and responded to Ms. Kenner's arguments. Diana did not refute the information contained in Ms. Kenner's table showing equal distributions would be made among Hafer Farms' members.

The trial court granted Ms. Kenner's motion and dismissed Diana's request for injunctive relief with prejudice.

Diana appealed.

## ANALYSIS

We review a trial court's order on a motion for summary judgment de novo. *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). A court may grant summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, establishes that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilkinson*, 180 Wn.2d at 249.

*Injunctive relief*

A party seeking injunctive relief must show (1) they have a clear legal or equitable right, (2) they have a well-grounded fear of immediate invasion of that right, and (3) the

acts complained of are either resulting in or will result in actual and substantial injury to them. *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000).

Here, it is undisputed that Justin and Debra, Randal and Diana, and the Orvalla estate each had a one-third ownership interest in Hafer Farms. Ms. Kenner provided a table showing a detailed breakdown of Hafer Farms' assets, values, and their past and intended distributions. After accounting for each member's adjusted capital accounts, the table shows that each one-third entity would receive approximately the same distribution.

Diana did not respond to this. Instead, the only response we can find in the record comes from the letter Diana sent to Ms. Kenner before she initiated this lawsuit. In that letter, Diana asserted Hafer Farms owed her "'several hundred thousand dollars.'" CP at 9. This assertion lacks any calculation. It did not set forth a value of Hafer Farms, did not show credits for Hafer Farms' assets that she and Randal had received or retained, and it did not explain whether it included the nearly $100,000 check issued by Hafer Farms that Diana refused to cash. "'[C]onclusory statements without adequate factual support are insufficient to defeat a motion for summary judgment.'" *Farias v. Port Blakely Co.*, 22 Wn. App. 2d 467, 493, 512 P.3d 574 (2022) (quoting *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993)).

In its ruling, the trial court did not explain why it granted Ms. Kenner's motion for summary judgment. Nevertheless, "[w]e may affirm the trial court on any grounds established by the pleadings and supported by the record." *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 766, 58 P.3d 276 (2002). Here, Diana failed to adequately contradict the information in Ms. Kenner's table that showed each of Hafer Farms' 33.33 percent interest would receive equal distributions. For this reason, Diana failed to show she had a clear legal or equitable right to any additional compensation beyond the intended distribution. We conclude that the trial court did not err in dismissing Diana's request to enjoin the intended distribution.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____        _____
Cooney, J.                              Murphy, J.

8