183 P.3d 283 (2008)
William DAVIES, individually and as Personal Representative of the Estate of Anita Davies, Appellant,
v.
HOLY FAMILY HOSPITAL, Respondent,
Stephen Anthony, D.O. and Jane Doe Anthony; Cancer Care Northwest; and John Does I-III, Defendants.
No. 25960-9-III.
Court of Appeals of Washington, Division 3.
February 21, 2008.
Publication Ordered May 13, 2008.
*285 Dustin Douglass Deissner, Van Camp & Deissner, Spokane, WA, for Appellant.
Carole Lynne Rolando, Attorney at Law, Angela Marnel Hayes, Randall & Danskin PS, Spokane, WA, Mary H. Spillane, William Kastner & Gibbs, Seattle, WA, for Respondent.
KULIK, J.
¶ 1 William Davies brought an action against Holy Family Hospital for medical negligence after his wife died following kidney surgery. Holy Family moved for partial summary judgment, seeking dismissal of Mr. Davies's claims that were based on the care provided by the hospital's employees. Mr. Davies must present competent expert medical testimony to defeat summary judgment. Mr. Davies fails to establish that the radiologist is qualified to render an opinion and Mr. *286 Davies does not allege specific facts to establish a cause of action. Accordingly, we affirm the trial court's grant of summary judgment.

FACTS
¶ 2 On March 25, 2004, Anita Davies was admitted to Holy Family after receiving treatment at Mount Carmel Hospital in Chewelah, Washington. On admission to Holy Family, Ms. Davies was placed on a heparin drip, an anti-coagulant. Shortly afterward, Ms. Davies was placed on Coumadin, also an anti-coagulant.
¶ 3 A CT-guided[1] renal biopsy procedure was ordered on March 30. The physician's order indicated that the Coumadin was to be discontinued, but the order did not address the heparin drip. The next day, during the procedure, the renal capsule was detached. Detachment of the renal capsule was a recognized risk of the procedure.
¶ 4 Following the procedure, Ms. Davies was returned to her hospital room. Soon, Ms. Davies began experiencing episodes of hypotension, indicative of internal bleeding. Over several hours, Ms. Davies "coded" on three separate occasions. Clerk's Papers (CP) at 86. On each occasion, hospital staff and employees responded but attributed Ms. Davies's condition to a reaction to narcotic medication rather than internal bleeding. Ms. Davies's internal bleeding went unrecognized and untreated. Ms. Davies died on April 1, 2004, while hospitalized at Holy Family Hospital following kidney surgery. Her death was the result of undiagnosed and untreated internal bleeding caused by damage to the renal capsule during the surgery.
¶ 5 Procedural History. William Davies, in his individual capacity and as the personal representative of Ms. Davies's estate, filed a medical negligence claim against Holy Family and three "John Doe" defendants on February 8, 2006. The complaint was later amended to add additional defendants.
¶ 6 Mr. Davies's complaint and amended complaint alleged that the biopsy procedure was undertaken without appropriately discontinuing the prescribed anti-coagulants or performing appropriate laboratory work. He further asserted that the hospital's actions and failure to act, in response to Ms. Davies's post-operative condition, fell below the applicable standard of care in violation of chapter 7.70 RCW and constituted negligence.
¶ 7 First Motion for Summary Judgment. On June 23, Holy Family filed its first motion for partial summary judgment, based on actual and ostensible agency. In its motion, Holy Family moved to dismiss any claims against the hospital related to the care and treatment provided by various independent physicians who Mr. Davies alleged were operating as actual or ostensible agents of Holy Family. The parties stipulated to the dismissal of those claims with prejudice. Holy Family's first motion for partial summary judgment is not the subject of this appeal.
¶ 8 Second Motion for Summary Judgment. On August 17, Holy Family filed a second motion for partial summary judgment, seeking dismissal only of those claims against Holy Family based on the care provided to Ms. Davies by the hospital's employees and actual agents. Those individuals expressly included the "nurses, respiratory therapists, physical therapists, certified nurse assistants (CNA), registered dieticians, and other actual employees of the hospital who may have been involved in the care of Mrs. Davies." CP at 186. In its motion, Holy Family asserted that Mr. Davies lacked competent evidence to support a prima facie case of medical negligence. Specifically, Holy Family asserted that Mr. Davies failed to produce any qualified expert witness.
¶ 9 A hearing on the motion for partial summary judgment was originally scheduled for September 15. Mr. Davies requested a continuance to allow his counsel time to receive a response to outstanding discovery requests, which was filed August 18. On August 25, a hearing was held regarding the motion for a continuance. The court denied the motion and ordered Mr. Davies to produce an affidavit from a qualified expert in response to Holy Family's motion for partial summary judgment by September 13. The *287 court, nonetheless, moved the hearing on the motion for partial summary judgment to December 1.
¶ 10 On September 11, Mr. Davies filed a disclosure of lay and expert witnesses. This document identified Dr. Randall Patten, Dr. George Lindholm, and other "[t]reating healthcare providers" as expert witnesses. CP at 219. Then, on September 13, Mr. Davies responded with a memorandum opposing Holy Family's motion for partial summary judgment and an affidavit from his attorney. Attached to the affidavit, Mr. Davies submitted the supplemental declaration of Dr. Patten, a physician practicing in Washington and board certified radiologist. Dr. Patten's declaration offered his opinion as to a breach of the standard of care by hospital and nursing staff. In a subsequent declaration, Dr. Patten also stated that based on a review of Ms. Davies's medical records, it did not appear that Coumadin was in fact discontinued and the heparin drip was in place up to the time the renal biopsy was performed. Holy Family filed its reply brief on September 14, arguing that Dr. Patten was not qualified to render an expert opinion as to the standard of care for nurses.
¶ 11 On December 1, the trial court considered Holy Family's motion for partial summary judgment at a hearing with oral argument. Mr. Davies's attorney had withdrawn without explanation, effective November 27. Consequently, Mr. Davies appeared at the hearing pro se. The trial court issued a verbal order granting Holy Family's motion and scheduled presentment of the order for December 22.
¶ 12 Mr. Davies's new counsel appeared for Mr. Davies on December 13. Subsequently, Mr. Davies, through his second attorney, filed two motions on December 20: a motion for reconsideration, and a motion to submit an untimely response because of the change of counsel. In support of the motion to submit an untimely response, Mr. Davies submitted the declarations from his attorney and Karen Crowe, R.N. Ms. Crowe is Mr. Davies's niece, but was never identified as an expert witness.
¶ 13 On December 22, as scheduled, the trial court signed the order granting Holy Family's motion for partial summary judgment. On January 9, 2007, the court ordered Holy Family to file a response brief to Mr. Davies's motion for reconsideration. Holy Family filed its response to Mr. Davies's motion. Mr. Davies was provided with time to file a reply, but he did not do so.
¶ 14 Holy Family also moved to strike Ms. Crowe's declaration on the basis that it was untimely and failed to present a sufficient foundation for admissibility in the action under CR 56(e). The trial court struck the declaration and ultimately denied Mr. Davies's motions for reconsideration and for leave to submit an untimely response. Mr. Davies filed a timely notice of appeal.
¶ 15 Although additional defendants were named in this action, Mr. Davies voluntarily dismissed the remaining parties and issues by stipulation.

ANALYSIS
¶ 16 Standard of Review. Summary judgment rulings are reviewed de novo. Seybold v. Neu, 105 Wash.App. 666, 675, 19 P.3d 1068 (2001). When reviewing an order granting summary judgment, this court engages in the same inquiry as the trial court, considering all facts and reasonable inferences in the light most favorable to the nonmoving party. Kahn v. Salerno, 90 Wash. App. 110, 117, 951 P.2d 321 (1998). Summary judgment is appropriate if the record before the court shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Ruff v. County of King, 125 Wash.2d 697, 703, 887 P.2d 886 (1995). An appellate court may affirm a trial courts disposition of a summary judgment motion on any basis supported by the record. Redding v. Virginia Mason Med. Ctr., 75 Wash.App. 424, 426, 878 P.2d 483 (1994).
¶ 17 As a threshold matter, the order granting partial summary judgment was properly preserved for review by Mr. Davies's notice of appeal, even though the notice did not specifically identify the trial court's underlying summary judgment order as the ruling for which he sought review. RAP 2.4(c) provides that an appellate court will *288 review a final judgment not designated in the notice of appeal if the notice designates an order deciding a timely posttrial motion based upon CR 59, which includes a motion for reconsideration. Thus, an appeal from an order on a motion for reconsideration, as in this case, allows review of the propriety of the final judgment itself.
¶ 18 Summary Judgment. To prevail on a claim of medical negligence, the plaintiff must prove that the defendant health care provider "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances" and "[s]uch failure was a proximate cause of the injury complained of." RCW 7.70.040(1), (2).
¶ 19 A defendant moving for summary judgment in a medical negligence case bears the initial burden of showing that (1) there is no genuine issue of material fact or, alternatively, (2) that the plaintiff lacks competent evidence to support an essential element of his claim. Seybold, 105 Wash.App. at 676, 19 P.3d 1068.
¶ 20 If the defendant shows that the plaintiff lacks sufficient evidence to support his or her case, the burden shifts to the plaintiff to produce evidence that supports a reasonable inference that the defendant was negligent. Id. Importantly, the plaintiff must respond with affidavits or other documents setting forth specific facts showing that there is a genuine issue for trial. Id.
¶ 21 Expert medical testimony is generally required to establish the standard of care and to prove causation in a medical negligence action. Guile v. Ballard Cmty. Hosp., 70 Wash.App. 18, 25, 851 P.2d 689 (1993) (citing Harris v. Groth, 99 Wash.2d 438, 449, 663 P.2d 113 (1983)). Therefore, to defeat summary judgment in most medical negligence cases, the plaintiff must produce competent medical expert testimony establishing that the injury complained of was proximately caused by a failure to comply with the applicable standard of care. Seybold, 105 Wash.App. at 676, 19 P.3d 1068. "If the plaintiff in a medical negligence suit lacks competent expert testimony, the defendant is entitled to summary judgment." Colwell v. Holy Family Hosp., 104 Wash.App. 606, 611, 15 P.3d 210 (2001).
¶ 22 Importantly, CR 56(e) provides that affidavits made in support of, or in opposition to, a motion for summary judgment must be based on personal knowledge, set forth admissible evidentiary facts, and affirmatively show that the affiant is competent to testify to the matters therein. Expert testimony must be based on the facts of the case and not on speculation or conjecture. Seybold, 105 Wash.App. at 677, 19 P.3d 1068. Such testimony must also be based upon a reasonable degree of medical certainty. McLaughlin v. Cooke, 112 Wash.2d 829, 836, 774 P.2d 1171 (1989). "Affidavits containing conclusory statements without adequate factual support are insufficient to defeat a motion for summary judgment." Guile, 70 Wash.App. at 25, 851 P.2d 689.
¶ 23 In the present case, Holy Family moved for partial summary judgment on the ground that Mr. Davies lacked competent expert testimony to make a prima facie case of medical negligence. Holy Family met its initial burden by showing that Mr. Davies had failed to produce a qualified expert who would opine that Holy Family's nurses or employees had deviated from the standard of care, and causally relate that breach to Ms. Davies's injuries. See Young v. Key Pharm., Inc., 112 Wash.2d 216, 226-27, 770 P.2d 182 (1989). This was sufficient to shift the burden of proof to Mr. Davies to produce an affidavit from a qualified expert medical witness alleging specific facts that establish a cause of action. See Guile, 70 Wash.App. at 25, 851 P.2d 689.
¶ 24 In response, Mr. Davies submitted a memorandum opposing Holy Family's motion and an affidavit from his attorney, which included the supplemental declaration of Dr. Patten, a Washington physician and board certified radiologist. Holy Family argues that Dr. Patten, through his declaration, failed to demonstrate that he had sufficient expertise in nursing respiration and physical therapy, nursing assistants, dietitians, and other nonphysician employees, to offer testimony *289 as to the standard of care required of those providers. As a result, Holy Family contends Dr. Patten's declarations were insufficient to defeat the motion for partial summary judgment.
¶ 25 This court must determine (1) whether Dr. Patten was qualified or competent to offer expert medical testimony as to the standard of care applicable to Holy Family's nonphysician employees and agents, and (2) whether his declarations were sufficient to support a prima facie case of medical negligence against the hospital.
¶ 26 Expert Testimony. In general, the qualifications of an expert are judged by the trial court and the trial court's determination will not be overturned absent an abuse of discretion. Seybold, 105 Wash. App. at 678, 19 P.3d 1068 (quoting McKee v. Am. Home Prods. Corp., 113 Wash.2d 701, 706, 782 P.2d 1045 (1989)). However, where the qualifications and opinions are part of a summary judgment proceeding, review is instead de novo. Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998); Seybold, 105 Wash.App. at 678, 19 P.3d 1068.
¶ 27 The standard of care required of a professional practitioner must be established by the testimony of an expert who practices in the same field. McKee, 113 Wash.2d at 706, 782 P.2d 1045. To testify that the defendant has breached the applicable standard of care, "a physician must demonstrate that he or she has sufficient expertise in the relevant specialty." Young, 112 Wash.2d at 229, 770 P.2d 182. A physician with a medical degree will ordinarily be considered qualified to express an opinion with respect to any medical question, including questions in areas in which the physician is not a specialist, so long as the physician has sufficient expertise to demonstrate familiarity with the medical procedure or problem at issue in the action. White v. Kent Med. Ctr., Inc., 61 Wash.App. 163, 173, 810 P.2d 4 (1991) (quoting 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 290[2], at 386 (3d ed.1989)).
¶ 28 Importantly, a physician may testify regarding a nurse's standard of care. Hall v. Sacred Heart Med. Ctr., 100 Wash. App. 53, 60, 995 P.2d 621 (2000). In Hall, the court found that a medical doctor had the expertise to testify regarding an intensive care unit nurse's standard of care where his testimony showed that he had "sufficient medical training and nursing supervisory expertise to testify as to the standard of care expected of critical care nurses." Id.
¶ 29 Here, Dr. Patten's declarations[2] were insufficient to defeat Holy Family's motion for partial summary judgment.
¶ 30 First, the declarations do not affirmatively show that Dr. Patten was competent to render an opinion as to the standard of care required of the various Holy Family agents and employees at issue in the motion for partial summary judgment. See CR 56(e).
¶ 31 While Dr. Patten's declaration states that he is "familiar" with the appropriate measures to be taken by "hospital staff, including nursing staff" in response to symptoms of internal bleeding, he does not state that he had knowledge of the relevant standards of care for those specific health care providers  nurses, physical and respiratory therapists, registered dietitians, and other nonphysician employees. CP at 176.
¶ 32 Dr. Patten's declarations also fail to provide any basis for his familiarity. Here, neither of the declarations show that Dr. Patten, as a radiologist, had sufficient expertise to be considered qualified to express an opinion regarding the standard of care applicable to nurses and other health care providers. In fact, Dr. Patten's declarations fail to reference any education, medical training, or supervisory experience which could demonstrate his familiarity with the standard of care in other health care fields. Under CR 56(e), declarations which contain conclusory statements unsupported by facts are insufficient for purposes of summary judgment. Guile, 70 Wash.App. at 25, 851 P.2d 689. Because Dr. Patten failed to establish that he had sufficient expertise or familiarity with *290 the standard of care applicable to nurses and other health care providers, he cannot be deemed competent to establish the standard of care or to testify regarding a breach of that standard.
¶ 33 Second, Dr. Patten's declarations are insufficient because they failed to causally connect Ms. Davies's death to the alleged nursing and hospital staff deficiencies. Dr. Patten states that Ms. Davies's cause of death was the direct result of internal bleeding. He opines that had the "probability" of internal bleeding been appropriately "suspected," this "likely would have resulted in appropriate work-up and diagnosis." CP at 176. Dr. Patten states that the failure of the hospital and nursing staff to recognize the internal bleeding "fell below the applicable standard of care." CP at 176.
¶ 34 At no point, however, does Dr. Patten link the breach of the standard of care to Ms. Davies's death. Medical testimony must at least be sufficiently definite to establish that the act, or failure to act, "probably" or "more likely than not" caused the subsequent injury. O'Donoghue v. Riggs, 73 Wash.2d 814, 824, 440 P.2d 823 (1968). Consequently, the declarations produced here are insufficient to establish the causation element of Mr. Davies's claim.
¶ 35 In conclusion, the declarations submitted from Dr. Patten do not provide competent expert medical testimony about the standard of care and causation. Without competent testimony, Mr. Davies is unable to state a prima facie case of medical negligence. The trial court properly granted Holy Family's motion for partial summary judgment.
¶ 36 Motion for Reconsideration. CR 59(a) governs grounds for a new trial or reconsideration and provides that "[o]n the motion of the party aggrieved, a verdict may be vacated and a new trial granted to all or any of the parties, and on all issues, or on some of the issues when such issues are clearly and fairly separable and distinct, or any other decision or order may be vacated and reconsideration granted." (Emphasis added.)
¶ 37 As a preliminary matter, Holy Family mistakenly argues that there is no authority permitting a party to seek reconsideration of an order granting or denying summary judgment based on CR 59(a)(9). By its language, CR 59 applies to a motion for a new trial or a motion for reconsideration. See Go2Net, Inc. v. C I Host, Inc., 115 Wash.App. 73, 90, 60 P.3d 1245 (2003).
¶ 38 "We review a trial court's denial of a motion for reconsideration for abuse of discretion." Kleyer v. Harborview Med. Ctr., 76 Wash.App. 542, 545, 887 P.2d 468 (1995). A trial court abuses its discretion only if its decision is manifestly unreasonable or rests upon untenable grounds or reasons. In re Marriage of Littlefield, 133 Wash.2d 39, 46-47, 940 P.2d 1362 (1997). "An abuse of discretion exists only if no reasonable person would have taken the view adopted by the trial court." Holaday v. Merceri, 49 Wash.App. 321, 324, 742 P.2d 127 (1987).
¶ 39 In the present case, Mr. Davies filed a motion for reconsideration of the trial court's order granting Holy Family's motion for partial summary judgment on the basis of CR 59(a)(4), newly discovered evidence, and CR 59(a)(9), that substantial justice had not been done. In his appellate brief, Mr. Davies concedes that the trial court was correct in ruling that Ms. Crowe's declaration was not "newly discovered evidence." Br. of Appellant at 14. Accordingly, this court need not review this basis for Mr. Davies's motion for reconsideration.
¶ 40 Mr. Davies argues that it was unjust, for purposes of CR 59(a)(9), for the trial court to grant summary judgment while he was unrepresented by counsel, "through no fault of his own," and therefore "unable to properly respond to the summary judgment." Br. of Appellant at 14, 17. Mr. Davies's argument is not supported by the record.
¶ 41 On November 17, Mr. Davies's first counsel filed a notice of his intent to withdraw as of November 27. The notice further states "[w]ithdrawal shall be effective without court order unless an objection to the withdrawal is served upon the withdrawing attorney." CP at 177 (emphasis added). *291 There is no evidence in the record explaining why counsel withdrew or substantiating Mr. Davies's claim that he proceeded without counsel "unintentionally" and "through no fault of his own." Br. of Appellant at 16, 14. Moreover, there is no evidence that Mr. Davies objected to his attorney's withdrawal or that he requested a continuance of the hearing to allow him time to retain new counsel.
¶ 42 Finally, Mr. Davies has not shown that he was prejudiced by his counsel's withdrawal, such that he was unable to properly respond to the motion for partial summary judgment. While counsel's withdrawal took place a few days prior to the date of the hearing and Mr. Davies appeared pro se, it is significant to note that the trial court's order granting the motion was based on its consideration of multiple documents, including Mr. Davies's response opposing Holy Family's motion for partial summary judgment, the affidavit of his first attorney, and the supplemental declaration of Dr. Patten.
¶ 43 Most significantly, CR 56(c) sets out the timetable for the nonmoving party to file its opposing memoranda, affidavits, and other documentation. Under this rule, a nonmoving party is not permitted to file responding documents any later than 11 calendar days before the hearing. In the present case, Mr. Davies identified Dr. Patten as his expert medical witness on September 11. On September 13, Mr. Davies filed his response opposing Holy Family's motion. On that same day, he filed Dr. Patten's supplemental declaration. The next day, Holy Family filed its reply brief in support of its motion for partial summary judgment. Between September 15 and December 1  the date of the hearing  there were no other filings by either Holy Family or Mr. Davies.
¶ 44 Moreover, under CR 56(c), by the time Mr. Davies's counsel withdrew, no other declarations or filings were permitted. There is no evidence that additional action could have been taken between the time of counsel's withdrawal on November 27 and the hearing on December 1 that would have prevented summary judgment.
¶ 45 In sum, there is no evidence to support Mr. Davies's contention that he was unable to properly respond to the motion for partial summary judgment. Accordingly, the trial court did not abuse its discretion by denying Mr. Davies's motion for reconsideration.
¶ 46 Response to Summary Judgment. On December 20, Mr. Davies filed his motion for reconsideration and filed a separate motion to submit an untimely response. In an affidavit filed in support of the motion to submit an untimely response, Mr. Davies's attorney stated that he was unable to obtain an expert opinion on behalf of Mr. Davies until December 13. The expert opinion referred to was Ms. Crowe's declaration.
¶ 47 Here, Mr. Davies argues that the trial court erred by denying his motion to submit an untimely response to the summary judgment motion. While the trial court may accept affidavits anytime prior to issuing its final order on summary judgment, the question of whether to accept or reject untimely filed affidavits lies within the trial court's discretion. CR 6(b); Brown v. Peoples Mortgage Co., 48 Wash.App. 554, 559, 739 P.2d 1188 (1987). Accordingly, the trial court's ruling on whether to accept an untimely response or to strike it as untimely is reviewed for an abuse of discretion. Idahosa v. King County, 113 Wash.App. 930, 936-37, 55 P.3d 657 (2002).
¶ 48 Both CR 56(c) and Spokane County Local Rule 56(a), require the adverse (nonmoving) party to file any responding documents at least 11 calendar days prior to the hearing on the motion for summary judgment. If the adverse party states in an affidavit that he or she is unable to present facts essential to their opposition, the court may, among other things, "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." CR 56(f). Here, Mr. Davies did not move for a continuance of the hearing on the motion for partial summary judgment in order to obtain a declaration or affidavit.
¶ 49 In addition, under CR 6(b) the trial court, for cause shown, may at any time in its discretion, enlarge a time period set by court rule or court order. Importantly, however, once the adverse party misses the original *292 deadline set forth in CR 56(c), a showing of excusable neglect is required under CR 6(b)(2).
¶ 50 Here, the trial court did not abuse its discretion by denying Mr. Davies's motion to submit an untimely response. Mr. Davies failed to establish any basis for failing to comply with the time period set forth in CR 56(c).
¶ 51 Mr. Davies concedes that the expert testimony of Ms. Crowe did not constitute newly discovered evidence. "If the evidence was available but not offered until after that opportunity passes, the parties are not entitled to another opportunity to submit that evidence." Wagner Dev., Inc. v. Fid. & Deposit Co., 95 Wash.App. 896, 907, 977 P.2d 639 (1999).
¶ 52 Further, there is no evidence that the trial's decision was an abuse of discretion in light of the fact that Mr. Davies was without counsel at the time of the summary judgment hearing. Any response, including Ms. Crowe's declaration, was due 11 days prior to the date of the hearing on December 1. CR 56(c). The record shows that at that time Mr. Davies was represented by counsel. Mr. Davies presents no reason why he was unable to timely produce a declaration from Ms. Crowe, especially given the fact she was his niece and known to him.
¶ 53 Finally, and most significantly, the declaration of Ms. Crowe was insufficient to defeat Holy Family's motion for partial summary judgment. Expert medical testimony is required to show causation. Colwell, 104 Wash.App. at 611, 15 P.3d 210. While a registered nurse may possess the education and skill necessary to testify as to the standard of care of a patient's treating nurses, a nurse is not competent to testify as to the patient's cause of death. Id. at 613, 15 P.3d 210. Consequently, "a medical doctor must still generally connect [the patient's] death to the alleged nursing deficiencies." Id. Furthermore, Ms. Crowe's curriculum vitae shows that she has never worked or been educated in Washington. As a result, Ms. Crowe's declaration fails to demonstrate that she is qualified to express an opinion as to the nursing standard of care in this state as required by RCW 7.70.040.
¶ 54 Ms. Crowe's declaration failed to set forth admissible facts and failed to show that she was competent to testify for purposes of CR 56(e). Under these circumstances, the trial court did not abuse its discretion by denying Mr. Davies's motion to submit an untimely response.
¶ 55 We affirm the trial court's grant of summary judgment. Pursuant to RAP 14.2, Holy Hospital is awarded its costs.
WE CONCUR: SWEENEY, C.J. and BROWN, J.
NOTES
[1] CT refers to computed tomography.
[2] The supplemental declaration from Dr. Patten that Mr. Davies relied upon in opposing Holy Family's second motion for summary judgment expressly states that it supplements his original declaration.