# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Estate of: | No. 47536-7-II |
| ROBERT RIDLEY, | consolidated with |
| Deceased. | No. 47403-4-II |
| KIMLY PROM, individually, | |
| Appellant, | |
| v. | |
| PHILIP CARVER, as Personal Representative of the Estate of Robert Ridley; and RIVERVIEW COMMUNITY BANK, a Washington financial institution, | UNPUBLISHED OPINION |
| Respondents, | |
| and | |
| JENNA SUY and PAULLA SUY, wife and husband, and their marital community comprised thereof, | |
| Respondents. | |

MELNICK, J. — Kimly Prom appeals the trial court's summary judgment dismissal of her Trust and Estates Dispute Resolution Act (TEDRA)[1] petition against Philip Carver, the personal representative (PR) of Robert Ridley's Estate (Estate), and Riverview Community Bank (Riverview). Because the nonprobate assets in dispute were not in the Estate or under its control,

---

[1] Ch. 11.96A RCW.

and because Riverview has statutory immunity, we affirm the trial court.  We also award attorney fees to Carver, as PR of the Estate, and Riverview.

## FACTS

After immigrating to this country from Cambodia, Prom and her sister, Jenna Suy,[2] developed and maintained a 30-year, family-like relationship with Ridley and his wife.  Ridley's wife passed away in 2009.  In May 2012, Ridley became terminally ill and required constant care.  Suy and Prom both provided care for him.

As part of his estate planning, Ridley met with his attorney, Sam Gunn.  Gunn prepared a last will and testament and set up a revocable living trust agreement for Ridley.  Philip Carver was named both the PR for the Estate and the trustee for the trust.[3]

On June 29, 2012, Ridley asked his longtime banker from Riverview, Collette Tynan, to come to his house to prepare a payable on death (POD) agreement for his checking account.  Gunn was also at the house.  Initially, Ridley indicated he wanted two beneficiaries: Prom and Suy.  Prom said she heard Ridley tell Gunn and Tynan that he wanted Prom and Suy to share the $500,000 in his checking account.  Ridley told Tynan they did not need to execute the POD designation that day and to come back after the weekend.  Tynan's assistant created a POD agreement that listed both Prom and Suy as beneficiaries.  Tynan asked Prom for her social security number and driver's license; however, Prom did not know whether the POD designation form included her name.  She never saw an account record with her name on it.  Ridley may or may not have signed this document.

---

[2] Prom's lawsuit also names Suy and her marital community as defendants; however, neither is a party in this appeal.

[3] Prom's lawsuit only involves the Estate.  It does not involve the trust.

2

On July 2, Tynan returned to Ridley's house with a prepared POD agreement for Ridley's signature. In front of Tynan, Suy told Ridley that he should make her the sole beneficiary because Prom "will not be able to make the money grow" and Suy "will take care of [Prom]." Clerk's Papers (CP) at 263, 262. Ridley asked Tynan to create a POD beneficiary account that listed Suy as the sole beneficiary. Tynan did not remember the details of the conversation, but she moved closer to Ridley to independently talk to him. She verified that he wanted one beneficiary on the account. As a result, Tynan shredded the prior document and created a new version per Ridley's request. Ridley signed the newly prepared POD beneficiary document and gave it to Tynan. On this same date, Ridley transferred $569,000 from his checking account into the trust.

Ridley continued to write checks from his checking account. He eventually overdrew the account and approved a transfer of $200,000 from the trust back into the checking account. Gunn and a bank employee made this suggestion to Ridley. Gunn did not know there was a POD designation on the checking account. After the checks cleared, Gunn asked Ridley if he wanted to transfer more money into the checking account from the trust. Ridley refused and wanted to leave everything the way it was.

After Ridley died on July 8, Riverview paid Suy $139,865.89, the balance of Ridley's checking account per the POD agreement.

I.     PROCEDURAL HISTORY

On December 20, 2013, Prom filed a TEDRA petition for an award of nonprobate assets and a determination of rights against Suy, Suy's husband, their marital community, Carver, and Riverview. Prom alleged many different causes of action. As relevant to this case, she claimed

3

Suy unduly influenced Ridley into naming Suy the sole beneficiary of the POD account. Prom sought half of the proceeds from the account per Ridley's original direction. Prom sought to rescind the POD agreement, and recover the funds transferred from the checking account to the trust.

II.    SUMMARY JUDGMENT

On September 10, 2014, Carver moved for summary judgment. He argued that all of Prom's claims should be dismissed against him because she had no "admissible evidence" to support her claims. CP at 90. He argued that Prom's assertion that Ridley promised to make her a beneficiary of the POD account was barred by the "Deadman Statute."[4] CP at 88. On September 25, Riverview joined Carver's motion.

On September 29, Prom filed a lengthy response in opposition to the motion for summary judgment and Riverview's joinder. She filed over 400 pages of documents. She argued genuine disputes of material fact existed. She also argued admissible evidence existed. In support of her response, Prom included receipts of deposits for Ridley's checking account, his agreement to establish a revocation living trust, the POD agreement with Suy listed as the beneficiary, a bank statement of the checking account, e-mails from Gunn, and a handwritten letter by Suy to the trial court.[5]

---

[4] RCW 5.60.030.

[5] Prom also provided the deposition testimony of Suy, Gunn, Tynan, Val Berrissoul, and Jennifer Konopasek, another Riverview employee, as support. Prom's and Gunn's deposition testimonies were the same testimony included in the motion for summary judgment. Konopasek testified that if a signature was missing, an account agreement would be invalid.

Riverview replied to Prom's arguments and claimed insufficient evidence supported her contentions or claims. It noted that when Ridley passed away, Prom was not a beneficiary on the POD account, and that Riverview could not be liable under RCW 30.22.120.[6]

Carver also replied and argued that Prom had not shown a viable action against the Estate because she had not shown that there was undue influence, that she was the beneficiary of the POD account when Ridley died, or that the Estate had control or possession of the disputed money when Ridley died.

On November 10, 2014, the trial court heard arguments on the summary judgment motion. The trial court granted Carver's and Riverview's motion for summary judgment. It subsequently entered written orders.

III.    MOTION FOR RECONSIDERATION

On December 22, 2014, Prom filed a motion for reconsideration of the trial court's order granting summary judgment to Riverview. Riverview responded that the motion should be denied because Prom merely reargued the points made in her response to the summary judgment motion.

The trial court declined to hear oral arguments on the motion for reconsideration and entered a written order denying Prom's motion.

IV.    MOTION FOR ATTORNEY FEES

Carver filed a motion for attorney fees pursuant to RCW 11.96A.150. Carver requested fees in the amount of $32,438.50, and costs in the amount of $2,419.26. Carver argued the trial court should use its discretion to award fees and costs because the litigation was time consuming, expensive, and extensive.

---

[6] Chapter 30.22 RCW is recodified as chapter 30A.22 RCW pursuant to LAWS OF 2014 ch. 37, § 4, effective January 5, 2015. The content of the statute remains the same. We will use the current recodified chapter throughout this opinion.

Prom responded to Carver's motion arguing it would be inequitable to impose the fees on her and fees are not awarded based on a prevailing party standard under TEDRA. She argued that Carver's proposed fees included "at least $10,172.52 in non-compensable fees and costs." CP at 609.

Riverview filed its own motion for attorney fees pursuant to TEDRA, requesting $16,680 in attorney fees and $1,441 in taxable costs. Prom responded to Riverview's motion for attorney fees, and again argued it would be inequitable to impose personal liability on Prom and that the requested fee amount improperly included "at least $5,023.50 in non-compensable fees and costs." CP at 599. Prom requested that the court determine the reasonableness of attorney fees under the Loadstar method.

On January 9, 2015, the trial court heard arguments on the motions for attorney fees. The trial court granted Carver's motion for attorney fees in the amount of $25,950.40 and costs in the amount of $2,419.26. The trial court entered findings of fact and conclusions of law for Carver's motion.[7] In relevant part, the trial court's findings of fact stated:

> 4. In this case, respondent Carver pled his right to fees, and petitioner had fair warning that fees could be awarded. The estate should not have to bear the costs and fees of this litigation.
> 5. The litigation was time consuming and expensive, involving numerous depositions in Vancouver, Washington and Seaside, Oregon, with travel time there and back. Further, the parties exchanged extensive documentary discovery and interrogatories and answers. The amount of work done by Carver's attorneys was reasonable for the litigation and issues involved.

---

[7] The findings of fact and conclusions of law were challenged by Prom in her assignments of error. However, she did not address them in her argument, so we need not address whether there was substantial evidence to support them. RAP 10.3(a)(6).

6. The hourly rate charged is reasonable for the community, and reasonable for the reputations, experience, and abilities of the attorneys performing the services. However, the court will reduce the amount to $300 per hour on a discretionary basis.

7. The overall amount of the fee is reasonable for the amount of money sought by plaintiff, and for the result obtained by defendant Carver (a win on summary judgment). However, the court will reduce the amount on a discretionary basis.

. . . .

11. The work done was not unnecessary, duplicative, or clerical in nature. There were no apparent wasted efforts unidentifiable costs, or vaguely worded time entries.

12. Plaintiff sought between $300,000 and $ 400,000 in this proceeding.

CP at 630-31. The trial court's conclusions of law stated:

2. In exercising its discretion, the court may consider any factors it deems relevant and appropriate. *In re Guardianship of Lamb*, 173 Wn.2d 173, 198, 265 P.3d 876 (2011).

3. The amount sought in fees is not disproportionate to the amount at issue in the litigation.

4. Carver adequately pled his right to fees, and the Ridley Estate should not have to bear the fees and costs caused by plaintiff's action.

5. The amounts sought by Carver are appropriate under the legal guidelines, and based on the findings and conclusions above.

CP at 631-32.

The trial court granted Riverview's motion for attorney fees in the amount of $16,680 and costs in the amount of $1,441. The trial court entered findings of fact and conclusions of law for Riverview's motion. In relevant part, the trial court's findings of fact stated:

8. As between petitioner and Riverview, Riverview is the prevailing party.

9. RCW 11.96A.150 allows the Court to award attorney's fees as the Court deems equitable.

10. A reasonable number of hours were spent by Riverview's counsel on this matter. There was no wasteful or duplicative work performed. Work was not performed on unsuccessful claims or defenses.

11. The hourly rates charged by Riverview's counsel, from $275 to $300, were reasonable and are reasonable in this community.

12. The following factors support the reasonableness of the total attorney fee award requested:

    (1) The time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly and the hourly fee agreement between the lawyer and client;

    (2) The fee customarily charged in the locality for similar legal services;

    (3) The amount involved in the matter and the results obtained;

    (4) The nature and length of the professional relationship between the Heurlin Potter firm and Riverview;

    (5) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

    (6) That the fees charged were on specified hourly rates.

CP at 626-27.  The trial court's conclusions of law stated:

    1. Petitioner's claims against Riverview, while arguable, were not legally supportable.  It is therefore equitable for Riverview to be awarded reasonable attorney's fees.

    2. The amount of attorney's fees requested by Riverview, $16,680, is reasonable.

    3. The taxable costs requested by Riverview, $1,441, were necessarily incurred and are taxable.

    4. Judgment will be entered in favor of Riverview, and against petitioner, in the above amounts.

CP at 627.

  Prom appeals. [8]

## ANALYSIS

I. SUMMARY JUDGMENT

  Prom argues that the trial court erred by granting summary judgment to Carver and Riverview because it misapplied the summary judgment standard, ignored that genuine issues of material fact existed, and misinterpreted the law.  We disagree.  Prom failed to present evidence

---

[8] On January 29, 2015, the trial court ordered the proceedings between Prom and Suy stayed while this case is on appeal.

8

that Riverview was not immune from suit under RCW 30A.22.120 and that the Estate was in control of the money she sought to recover.

A.    Standard of Review

We review an order for summary judgment de novo, engaging in the same inquiry as the trial court. *Jones v. Allstate Ins. Co*., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe all facts and their reasonable inferences in the light most favorable to the nonmoving party. *Jones*, 146 Wn.2d at 300.

A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton*, 115 Wn.2d at 516. If the moving party satisfies its burden, the nonmoving party must present evidence demonstrating that a material fact remains in dispute. *Atherton*, 115 Wn.2d at 516. The evidence presented must set forth facts that would be admissible in evidence. CR 56(e).

The nonmoving party may not rest on allegations or denials from the pleadings. CR 56(e). The response, by affidavits or as otherwise provided under CR 56, must set forth specific facts that reveal a genuine issue for trial. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988). "[C]onclusory statements of fact will not suffice." *Grimwood*, 110 Wn.2d at 360. If the nonmoving party fails to demonstrate that a material fact remains in dispute, and reasonable persons could reach but one conclusion from all the evidence, then summary judgment

is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

   B.  Issues Based on Carver and Riverview's Reply Briefs

   Prom argues that the trial court erred by permitting Carver and Riverview to raise new issues in their replies to her summary judgment opposition. Specifically, she argues that for the first time in its reply, Riverview argued that it was immune from liability, and, for the first time in his reply, Carver argued that the Estate did not even have possession of the funds she sought. Riverview and Carver assert they made these arguments in response to those made by Suy in her response to their motion for summary judgment. We agree with Riverview and Carver.

   The moving party has the responsibility to raise in its motion all of the issues on which it believes it is entitled to summary judgment. *White v. Kent Med. Ctr., Inc.*, 61 Wn. App. 163, 168, 810 P.2d 4 (1991). "Allowing the moving party to raise new issues in its rebuttal materials is improper because the nonmoving party has no opportunity to respond." *White*, 61 Wn. App. at 168. "[T]he rule is well settled that the court will not consider issues raised for the first time in a reply brief." *White*, 61 Wn. App. at 168; RAP 10.3(c). In addition, nothing in CR 56(c) permits the party seeking summary judgment to raise issues at any time other than in its motion and opening memorandum. "Rebuttal documents are limited to documents which explain, disprove, or contradict the adverse party's evidence." *White*, 61 Wn. App. at 168-69. "Explaining why a respondent's argument is incorrect is a proper subject for a reply brief." *New Cingular Wireless PCS, LLC v. City of Clyde Hill*, 187 Wn. App. 210, 220 n.5, 349 P.3d 53, *review granted sub nom.*, 184 Wn.2d 1018, 361 P.3d 746 (2015).

Here, Carver and Riverview moved for summary judgment because Prom failed to establish the claims she filed against them. Prom responded to the motion for summary judgment and argued that a genuine issue of material fact existed as to whether the POD agreement should be rescinded based on Suy's undue influence over Ridley. She also argued that the original shredded POD document, which Ridley may or may not have signed, should control. Carver and Riverview filed replies to these specific arguments Prom raised. Both Riverview and Carver continued to argue in their replies that because there was no genuine issue of material fact and Prom still did not present evidence to support any claim against them, the trial court should grant summary judgment. They were not creating new issues, they were explaining further why Prom's arguments were incorrect. Their arguments rebutted the arguments Prom made in her response.

We also note that Prom neither moved to strike Carver's or Riverview's replies nor raised any objection in her motion for reconsideration. Prom did not unequivocally object to the replies. She substantively argued them in the trial court.[9] Under RAP 2.5, Prom may not assert this specific argument for the first time on appeal.

Because Carver and Riverview responded to arguments Prom raised, the trial court did not err.

C.      Riverview and Carver Not Liable

Financial institutions are released and discharged for claims under certain circumstances.

> In making payments of funds deposited in an account, a financial institution may rely conclusively and entirely upon the form of the account and the terms of the contract of deposit at the time the payments are made. . . . Unless a financial institution has actual knowledge of the existence of dispute between depositors, beneficiaries, or other persons claiming an interest in funds deposited in an account, all payments made by a financial institution from an account at the request of any

---

[9] Prom's failure to make such a motion waives any objections to a deficiency in the report or how it was presented on appeal. *Bercier v. Kiga*, 127 Wn. App. 809, 825, 103 P.3d 232 (2004).

depositor to the account and/or the agent of any depositor to the account . . . shall constitute a complete release and discharge of the financial institution from all claims for the amounts so paid.

RCW 30A.22.120.

In this case, the record is void of any evidence presented at summary judgment to show that Riverview had actual knowledge a dispute existed when it distributed the funds pursuant to the POD agreement. Therefore, the trial court did not err by granting summary judgment to Riverview.

Funds in a POD account belong to the POD designated beneficiary upon the death of the depositor. RCW 30A.22.100, RCW 30A.22.160. The undisputed evidence demonstrated that the funds in dispute were paid to Suy pursuant to the POD designation. There is no evidence to show that the transaction involved Carver or that the Estate had any control over the funds that were disbursed.

Prom seems to argue that Carver had potential liability because the funds were transferred between the POD account and the trust. However, Prom only sued Carver in his capacity as the PR of the Estate, not the trustee of the trust. This position is solidified by Prom's position that the POD account should have been disbursed to her and Suy. None of this activity would involve Carver because the funds were not part of the Estate.

Prom also argues that Riverview and Carver are liable because of undue influence. We have found no evidence of undue influence in the summary judgment materials. However, even if Ridley was unduly influenced by Suy, that would not affect our decision. There is no evidence that Riverview had actual knowledge of a dispute.

II.    MOTION FOR RECONSIDERATION

Prom argues that the trial court abused its discretion by denying her motion for reconsideration because it committed significant errors at summary judgment that warrant reversal. We disagree.

A.    Standard of Review

"'We review a trial court's denial of a motion for reconsideration for abuse of discretion.'" *Davies v. Holy Family Hosp.*, 144 Wn. App. 483, 497, 183 P.3d 283 (2008) (quoting *Kleyer v. Harborview Med. Ctr.*, 76 Wn. App. 542, 545, 887 P.2d 468 (1995)).  "A trial court abuses its discretion only if its decision is manifestly unreasonable or rests upon untenable grounds or reasons."  *Davies*, 144 Wn. App. at 497.  "An abuse of discretion exists only if no reasonable person would have taken the view adopted by the trial court."  *Holaday v. Merceri*, 49 Wn. App. 321, 324, 742 P.2d 127 (1987).

B.    The Trial Court Did Not Abuse Its Discretion

On December 22, 2014, Prom filed a motion to reconsider the trial court's summary judgment grant to Riverview pursuant to CR 59(a)(1), (7), (8), and (9).  A party is entitled to reconsideration of rulings where there is any one of the following:

> (1) Irregularity in the proceedings of the court, jury, or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial;
> . . . .
> (7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;
> (8) Error in law occurring at the trial and objected to at the time by the party making the application; or
> (9) That substantial justice has not been done.

CR 59(a).  In her motion to reconsider, Prom reiterated the arguments she made at summary judgment.  She did not identify any new reason she was entitled to reconsideration of the ruling.

The trial court had tenable grounds for denying the motion for reconsideration and did not abuse its discretion.

III.     MOTION FOR ATTORNEY FEES

Prom argues that the trial court erred by granting Carver and Riverview attorney fees and that it abused its discretion in determining the reasonable amount of such fees. We disagree.

A.     Standard of Review

To determine whether the trial court properly awarded attorney fees, we apply a dual standard of review. *Gander v. Yeager*, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012). We review the initial determination of whether there is legal basis to award attorney fees de novo. *Gander*, 167 Wn. App. at 647. If there is a legal basis for awarding attorney fees, we review "a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion." *Gander*, 167 Wn. App. at 647. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Ermine v. City of Spokane*, 100 Wn. App. 115, 119-20, 996 P.2d 624 (2000).

"When a question of law requires interpretation of a statute, our objective is to carry out the legislature's intent." *Kitsap Bank v. Denley*, 177 Wn. App. 559, 580, 312 P.3d 711 (2013). We begin our analysis with the statute's plain meaning. *Kitsap Bank*, 177 Wn. App. at 580. First, we discern the plain meaning of the statute from "'the ordinary meaning of the language at issue, the statute's context, related provisions, and the statutory scheme as a whole.'" *Kitsap Bank*, 177 Wn. App. at 580 (quoting *Sprint Spectrum, LP v. Dep't of Revenue*, 174 Wn. App. 645, 658, 302 P.3d 1280 (2013)). However, when a statute's language is unambiguous, we determine the legislature's intent from the plain language of the statute alone. *Kitsap Bank*, 177 Wn. App. at 580.

14

B.    The Trial Court Did Not Abuse Its Discretion

A trial court may award attorney fees based on RCW 11.96A.150(1):

> Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings.  The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable.  In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

Ch. 11.96A RCW applies to "[a]ll matters concerning the estates and assets of . . . deceased persons, including matters involving nonprobate assets."  RCW 11.96A.020(1)(a).  By definition, this includes "[t]he determination of any question arising in the administration of an estate or trust or with respect to any nonprobate asset."  RCW 11.96A.030(2)(c).  We determine the legislature's intent from the plain language of the statute because it is unambiguous.[10]  *Kitsap Bank*, 177 Wn. App. at 580.

Here, the trial court's procedure and analysis in determining attorney fees to be awarded was proper and not manifestly unreasonable.[11]  *See In re Estate of Evans*, 181 Wn. App. 436, 452, 326 P.3d 755 (2014).  The trial court considered the proposed fees and entered findings of fact to

---

[10] The parties do not argue that the statute is ambiguous or that we should not give it its plain meaning.

[11] Prom argues the trial court should have used the lodestar method in analyzing the request for attorney fees.  "While the lodestar method is generally accepted as the starting point for attorney fee determinations, it is not required in all contexts.  Where the primary considerations for the fee award are equitable, courts are not required to apply the lodestar method to determine an award of fees."  *In re Guardianship of Decker*, 188 Wn. App. 429, 447, 353 P.3d 669, *review denied*, 184 Wn.2d 1015, 360 P.3d 818 (2015).

support its conclusion that reasonable attorney fees should be awarded to Riverview and Carver.

These findings of fact remain unchallenged, and are therefore, verities on appeal. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002). The trial court determined that because it granted the parties summary judgment and denied Prom's motion for reconsideration because the petitioner's claims were not legally supportable, it was equitable to award Riverview and Carver reasonable attorney fees. The trial court listed six factors to support its determination of reasonableness of the award with regard to Riverview:

> (1) The time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly and the hourly fee agreement between the lawyer and client;
> (2) The fee customarily charged in the locality for similar legal services;
> (3) The amount involved in the matter and the results obtained;
> (4) The nature and length of the professional relationship between the Heurlin Potter firm and Riverview;
> (5) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (6) That the fees charged were on specified hourly rates.

CP at 654-55. With regard to Carver and the Estate, the trial court considered the reasonableness of the hourly rate, whether the work done was unnecessary, duplicative, or clerical in nature, and the amount of time spent. The trial court received extensive documentation on the hours of work completed by the parties' attorneys and determined the amount of work completed was reasonable for the litigation of the case. The case required travel, many depositions, and extensive discovery. Finally, it determined the suggested hourly rate for fees was reasonable, but it even reduced the

amount in Carver's request to $300 per hour, on a discretionary basis. The trial court's findings justify its conclusion that it was equitable to award attorney fees to Carver and Riverview in the amount it ordered.

It is clear the trial court properly exercised its discretion in making findings of fact that support its conclusions of law to award attorney fees. The trial court did not abuse its discretion in awarding attorney fees to the parties.

IV.   ATTORNEY FEES

Prom, Carver, and Riverview all request attorney fees on appeal.

Carver and Riverview request attorney fees on appeal pursuant to RCW 11.96A.150 and RAP 18.1. RAP 18.1(a) states that "if applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before . . . the Court of Appeals . . . the party must request the fees or expenses as provided in this rule."

Here, RCW 11.96A.150 allows an award of fees in estate dispute resolutions "as the [appellate] court determines to be equitable." Under RCW 11.96A.150(1), we may consider "any and all factors" that we deem to be relevant and appropriate, "which factors may but need not include whether the litigation benefits the estate."

Prom is not the prevailing party on appeal. Therefore, we deny her request for fees. Prom caused Carver and Riverview to spend considerable resources on this appeal. It is appropriate to require Prom to pay the costs. RCW 11.96A.150(1). Accordingly, we grant Carver's and Riverview's request for costs, including reasonable attorney fees for responding to Prom's appeal.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Johanson, P.J.

_____
Sutton, J.