IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| JAMES READY, an individual, | No. 87054-8-I |
| Appellant, | |
| v. | |
| SEAN K. KEEM, MD, | |
| Respondent, | |
| SWEDISH HEALTH SERVICES, d/b/a: SWEDISH MEDICAL CENTER, a Washington nonprofit corporation; THE POLYCLINIC MADISON CENTER, a Foreign Limited Liability Company, d/b/a: THE POLYCLINIC MSO, LLC; MARK W. SMITH, MD; THE POLYCLINIC, PLLC, a Washington Professional Limited Liability Company; THE POLYCLINIC, d/b/a: POLYCLINIC MANAGEMENT SERVICES COMPANY, LLC, a Washington Limited Liability Company; JOHN AND JANE DOES 1 - 5, | UNPUBLISHED OPINION |
| Defendants. | |

BOWMAN, A.C.J. — James Ready appeals the trial court's summary judgment dismissal of his medical negligence claim. Ready argues the trial court erred by concluding that his claim was unsupported by sufficient expert testimony. We affirm.

FACTS

On November 14, 2018, orthopedic spinal surgeon Dr. Sean Keem performed anterior lumbar spine surgery on Ready at Swedish Medical Center First Hill Campus.[1] Postsurgery, Ready developed short-term urine retention, significant ileus,[2] elevated creatinine,[3] and small red blood cells in his urine. Consulting physician Dr. Mark Smith diagnosed Ready with a urinary tract infection, and Swedish discharged Ready on November 22, 2018.

Less than a week later on November 27, Swedish readmitted Ready for pain, distension, and nausea. A CT[4] scan showed a large collection of fluid on his pelvis and a transection of his left ureter.[5] Between November 28 and December 8, doctors performed four more surgical procedures to manage Ready's complications from the transected ureter.[6] Swedish discharged Ready

---

[1] The surgical procedures included (1) an anterior lateral interbody decompression arthrodesis of the lumbosacral joint (L5-S1); (2) anterolateral interbody decompression arthrodesis of the fourth and fifth lumbar vertebrae (L4-5) as a separate and distinct procedure, using a different surgical technique and approach; (3) posterior spinal arthrodesis of the fourth lumbar vertebrae and first sacral vertebrae; (4) anterior instrumentation of the L5-S1; and (5) insertion of intervertebral prosthesis into the L4-5 and the L5-S1.

[2] "Ileus" is an obstruction of the bowel, usually accompanied by nausea, vomiting, bloating, and pain. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1125 (2002).

[3] "Creatinine" is a white crystalline compound formed from creatine in the muscle, blood, and urine. *See* WEBSTER'S at 532.

[4] Computed tomography.

[5] A "ureter" is a pair of ducts that carry urine from the kidneys to the bladder. Humans have two. *See* WEBSTER'S at 2521.

[6] The four procedures were (1) placing a left nephrostomy tube and intraabdominal drain on November 28, (2) placing a left leg duplex and an inferior vena cava filter on December 2, (3) placing a fluid collection drain on December 6, and (4) performing an urgent thrombectomy, stenting, and fasciotomy for arteriovenous fistula and phlegmasia on December 28.

again on December 28.  Doctors repaired Ready's ureter through another surgery on March 6, 2019.

On November 14, 2022, Ready sued Swedish,[7] Dr. Keem, the Polyclinic,[8] and John and Jane Does 1 through 5 for medical negligence, lack of informed consent, and corporate negligence under chapter 7.70 RCW.  A week later on November 22, Ready amended his complaint to add defendants Dr. Smith, the Polyclinic PLLC, and the Polyclinic doing business as the Polyclinic Management Services Company LLC.[9]

In his complaint, Ready alleged that Dr. Keem negligently transected his left ureter during surgery and that "Dr. Keem and/or Dr. Smith should have been on notice of [his] iatrogenic ureteral injury sustained during surgery on November 14, 2018, by virtue of the post-surgical clinical evidence of such injury."  He said Dr. Keem, Dr. Smith, and "Swedish's employees and nurses owed [him] a duty of care . . . to prevent such incident from occurring."  And his pain, nausea, erectile dysfunction, drop foot, and other medical problems "were a direct and proximate result of the iatrogenic ureteral injury sustained during surgery on November 14, 2018, and subsequent failures to identify it."[10]

---

[7] Ready identified Swedish as Swedish Health Services doing business as Swedish Medical Center

[8] Ready identified the Polyclinic as the Polyclinic Madison Center doing business as the Polyclinic MSO LLC.  The Polyclinic is now known as Optum.

[9] Ready alleged the Polyclinic "employed and/or contracted with" Dr. Keem and Dr. Smith.

[10] On July 15, 2024, the trial court granted defendants Swedish, the Polyclinic, and Dr. Smith's motions for summary judgment.  Ready does not appeal those orders.

On June 14, 2024, Dr. Keem moved for summary judgment, arguing that Ready's claims were unsupported by expert testimony.  Ready opposed the motion and filed a declaration from orthopedic spinal surgeon Dr. Sohrab Gollogly.  Dr. Gollogly explained that "[i]dentification of the ureter is crucial during any surgical procedure involving its proximity to prevent potential damage," and that "[p]ost[ ]operative care for this procedure requires vigilance for potential complications, prompt recognition, and immediate management."  He said that a CT scan with IV[11] contrast should have been performed "immediately" after learning of Ready's elevated creatinine levels.  He pointed out that the "orthopedic surgery team" did not mention to the postoperative care team that "the constellation of signs and symptoms could have been caused by a ureteral injury."  Dr. Gollogly then concluded that there were several opportunities to arrive at a definitive diagnosis earlier in the postoperative period if the possibility of a ureteral transection had been considered in the differential diagnosis and that Ready's injuries could have been avoided.

The court heard oral argument on July 12, 2024.  During argument, Ready told the court he was "not asserting or alleging any negligence with respect to the initial transection of the ureter."  Instead, his allegation of medical negligence "has to do with the postoperative care and the lack of communication of the possibility of the [transected] ureter."[12]  Ready then argued that Dr. Keem had a

---

[11] Intravenous.

[12] On appeal, Ready tries to revive his claim that Dr. Keem negligently transected his ureter during surgery.  But we will not consider an issue on appeal that was abandoned at oral argument below.  *Holder v. City of Vancouver*, 136 Wn. App. 104, 106-07, 147 P.3d 641 (2006).

duty to warn the postoperative team of the possibility of a transected ureter, that Dr. Keem was negligent in failing to do so, and that his failure was the proximate cause of Ready's injuries.

The trial court granted summary judgment for Dr. Keem. It concluded that Dr. Gollogly's declaration did not sufficiently show that an orthopedic spinal surgeon's standard of care compelled Dr. Keem to warn the postoperative staff about the possibility of a transected ureter or that any breach of that standard proximately caused Ready's injuries.

Ready appeals.

ANALYSIS

Ready argues that the trial court erred by dismissing his medical negligence claim against Dr. Keem at summary judgment. We disagree.

We review a trial court's grant of summary judgment de novo. *Campanelli v. PeaceHealth Sw. Med. Ctr.,* 34 Wn. App. 2d 24, 35, 565 P.3d 933 (citing *McDevitt v. Harborview Med. Ctr.*, 179 Wn.2d 59, 64, 316 P.3d 469 (2013)), *review denied*, 5 Wn.3d 1012, 577 P.3d 375 (2025). We "engage[ ] in the same inquiry as the trial court, considering all facts and reasonable inferences in the light most favorable to the nonmoving party." *Davies v. Holy Fam. Hosp.*, 144 Wn. App. 483, 491, 183 P.3d 283 (2008) (citing *Kahn v. Salerno*, 90 Wn. App. 110, 117, 951 P.2d 321 (1998)), *abrogated on other grounds by Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 393 P.3d 776 (2017). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

5

A defendant moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact or that the plaintiff lacks competent evidence to support an essential element of their claim. *Davies*, 144 Wn. App. at 492 (citing *Seybold v. Neu,* 105 Wn. App. 666, 676, 19 P.3d 1068 (2001)). The plaintiff must then produce sufficient evidence to create a genuine issue of material fact for trial. *Campanelli,* 34 Wn. App. 2d at 35; *see Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 86, 419 P.3d 819 (2018) (citing *Morinaga v. Vue*, 85 Wn. App. 822, 935 P.2d 637 (1997)). This is a burden of production, not persuasion. *Campanelli*, 34 Wn. App. 2d at 36 (citing *Chervilova v. Overlake Obstetricians & Gynecologists, PC*, 30 Wn. App. 2d 120, 125, 543 P.3d 904 (2024)).

RCW 7.70.040 governs a medical negligence claim. *Campanelli*, 34 Wn. App. 2d at 35 (citing *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wn.2d 438, 443-33, 663 P.2d 113 (1983)). To prevail on such a claim, a plaintiff must show that the health care provider "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances," and that the failure was the proximate cause of the injury. RCW 7.70.040(1). Generally, qualified expert witness testimony must support each element. *Reyes*, 191 Wn.2d at 86 (citing *Miller v. Jacoby*, 145 Wn.2d 65, 71-72, 33 P.3d 68 (2001)). The expert's opinion must be grounded in fact and cannot be based on conjecture or speculation. *Chervilova*, 30 Wn App. 2d at 125.

Here, Ready supports his medical negligence claim with a declaration from Dr. Gollogly, who explains that Ready's postoperative care required vigilance for potential complications to ensure prompt recognition and immediate management.[13] In Dr. Gollogly's opinion, the postoperative team should have performed a CT scan with IV contrast when it learned that Ready's urine contained red blood cells and that his creatinine levels were elevated. Yet "there was no mention by the orthopedic surgery team that the constellation of signs and symptoms could have been caused by a ureteral injury," which is "a known, albeit rare, complication of anterior spine surgery." So, "the medical care provided by Dr. Keem and the staff at Swedish . . . fell below the standard of care of a reasonably prudent physician, practicing in the state of Washington at that time."

But no evidence shows that Dr. Keem knew that Ready's urine contained red blood cells or that his creatinine levels were elevated after the operation. Nor does Dr. Gollogly state that the standard of care for an orthopedic surgeon requires notifying a postoperative team that transection of the ureter is a known but rare complication of anterior spine surgery. As a result, Dr. Gollogly's declaration fails to support the elements of Ready's medical negligence claim against Dr. Keem.

Still, Ready argues that an expert witness need not utter "magic words" or testify in a particular format. And he cautions that such a requirement would elevate the form of an expert's testimony over its substance. Even so, an opinion

---

[13] The parties do not dispute Dr. Gollogly's qualifications as an expert witness.

alleging breach of an unidentified standard of care that is not grounded in fact lacks substance, not form.

Viewing the evidence in a light most favorable to Ready, he fails to support his medical negligence claim against Dr. Keem with expert testimony. As a result, we affirm the trial court's dismissal of that claim on summary judgment.

_____, ACJ

WE CONCUR:

_____        _____